THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JACK DURAND, Plaintiff in Error.

*Opinion filed June 16, 1926.*

1. CRIMINAL LAW—*court should not limit cross-examination of accomplice—reversal.* Where an accomplice is used as a witness for the prosecution the widest latitude of cross-examination ought to be permitted; and this rule is especially applicable where a co-defendant unexpectedly testifies for the prosecution while on the stand as a witness for the defense; but the error in unduly limiting cross-examination of such witness will not require a reversal where his testimony is fully corroborated by other facts and circumstances which point to the guilt of the defendant.

2. SAME—*when admission of written confessions of co-defendant cannot be regarded as prejudicial.* In admitting a written confession of a co-defendant everything should be stricken from it except that which refers to the defendant confessing, and where the court has so stricken from confessions of a co-defendant direct references to the defendant, the fact that certain statements were left in them which identify the defendant as the party to whom the confessions refer cannot be regarded as prejudicial in a case where the defendant's guilt is established independently of confessions.

3. SAME—*what is proper instruction as to alibi.* It is proper to instruct the jury that before a defendant can avail himself of the defense of alibi the proof must cover the whole period of the commission of the crime, so as to render it impossible, or highly improbable, that the defendant could have committed the act.

4. SAME—*what instruction as to credibility of testimony of accomplice is proper.* The jury may be instructed, in a proper case, that the testimony of an accomplice is competent evidence and that the credibility of such an accomplice is for the jury to pass upon as they pass upon the credibility of any other witness.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

E. V. ORVIS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ASHBEL V. SMITH, State's Attorney, and MERRILL F. WEHMHOFF, (SIDNEY H. BLOCK, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Jack Durand, was charged jointly with James Miller and Franklin Patterson, in an indictment consisting of ten counts, with the crimes of robbery, burglary, larceny and receiving stolen property. Patterson entered a plea of guilty and testified against Durand. Miller entered a plea of not guilty and appeared throughout the trial as a defendant, taking the witness stand as such, but the character of the testimony given by him indicates that he had an understanding with the prosecution that he was to testify against Durand. Plaintiff in error was found guilty of the crime of robbery and sentenced to the Illinois State Reformatory.

September 24, 1924, the home of Edson White, in Lake Forest, was entered about nine o'clock in the evening by a man who took from the person of Hester White a pearl necklace, a diamond ring and a wrist watch, and from her aunt, Kathleen Pearson, a necklace and a diamond ring. At this time plaintiff in error, Miller and Patterson, who were then twenty-three, twenty and eighteen years old, respectively, lived in Lake Bluff. Shortly after the robbery some of the stolen property was seen in the possession of plaintiff in error. In December he went to California and was working as a black-face on a "nigger dip" in an amusement park in Venice when he was arrested. The attention of the authorities was directed to Durand, Miller and Patterson as the robbers who entered the White home by a letter found on the person of Miller when he was arrested by the Lake Forest police, containing a reference to the White robbery.

The direct evidence offered on behalf of the prosecution which connects plaintiff in error with this robbery is the testimony of the accomplice, Patterson. He testified that he met plaintiff in error about six o'clock P. M. Septem-

ber 24, and that plaintiff in error told him to tell Miller to get a gun, dress in old clothes and be prepared to meet him later in the evening; that Miller got his father's gun out of a bureau drawer and some old clothes for himself and witness; that they waited at Miller's house for plaintiff in error, who arrived about eight o'clock in a Cadillac touring car; that they entered the car and drove to the Edson White home, which plaintiff in error told them he was planning to rob; that he told them he was known in the White home and could not enter it, but that witness and Miller should enter and take anything they found which was valuable; that they stopped the car about 100 yards from the White home and walked through a hedge to the house; that Miller went into the house alone and came back with two necklaces and two rings, which he gave to plaintiff in error; that they then drove to the home of plaintiff in error, where they left the Cadillac car, got into an Essex car and drove to the home of witness; that he saw plaintiff in error just before the latter left for California, when plaintiff in error told him he could not get as much money for the stolen property as he wanted but would dispose of it in California and send him and Miller their shares.

As a witness for the defense Miller told the same story as Patterson. He also testified that he was with plaintiff in error in Detroit, saw the necklace there and went with plaintiff in error to Lewy Bros., jewelers, to find out how much the necklace was worth; that after plaintiff in error had gone to California he wrote him several letters regarding the jewelry; that he burned all these letters; that in some of them plaintiff in error said he would send witness his share of the money as soon as he could dispose of the necklaces and rings.

In addition to this direct testimony other witnesses testified to circumstances connecting plaintiff in error with this robbery. Janet Wilson, of Detroit, testified that plaintiff in error gave her daughter the pearl necklace identified

as the property of Hester White, telling her he won it in a crap game. Julia Reed, who was at the Wilson home at the time plaintiff in error was there with the pearls, fixes the date of the visit as November 16. She testifies that plaintiff in error introduced Miller, who was with him, as Donahue, saying he was a newspaper man. Edith Skinner, a clerk employed by Lewy Bros., testified that she saw the pearl necklace in the possession of plaintiff in error and had it valued for him. Hugh F. McCarron, a police officer of Los Angeles, testified that he arrested plaintiff in error at Venice, California; that when he made the arrest he asked plaintiff in error what his name was, and received the reply, "Oh, hell! You know my name;" that when he was placed under arrest his face was blackened and his hair dyed red; that witness remarked that whoever did the job of dyeing his hair did a good job, and that plaintiff in error said, "I did that myself." When asked about the jewelry plaintiff in error told the officer he had some jewelry which was given to him by a man named Miller, but that he had lost some diamonds when he lost his suitcase. He admitted he thought it was "hot stuff," when asked by the officer if he had any idea the property was stolen.

Plaintiff in error testified in his own behalf, denying that he had had any part in the robbery but admitting he had the jewelry in his possession shortly after the robbery. He said that Miller owed him $100 and that he took the jewelry in settlement of the debt; that he took the pearls to Detroit and gave them to his wife, who is the daughter of Mrs. Wilson; that his wife kept them for about a month and then returned them to him; that he tried to dispose of them at a pawnshop but could not get enough for them; that he had them valued at Lewy Bros. and then took them to Lake Bluff to Bernette Vanderkloot; that he went to California in December to get work but did not disguise himself; that when arrested he told the officer he had had the necklace but knew nothing about any diamond rings. He

321–34

testified that he was at home the entire evening of September 24 and that he did not visit the White home with Miller and Patterson.

In support of his alibi, his parents and Helen Donkin, who was employed at the Durand home, testified that plaintiff in error was at home all evening September 24; that the Cadillac car was locked and the key kept by Mrs. Durand in a secret drawer in the house; that the next morning, when they read in the paper about the robbery of the White home, Mrs. Donkin remarked to Mrs. Durand, "Thank God! That is one thing they can't blame on Jack."

The principal grounds urged by plaintiff in error for a reversal of the judgment are that he was unduly limited in his cross-examination of Miller and Patterson, that the court erred in its rulings on the admission of evidence, that the court erred in the giving and refusing of instructions, and that plaintiff in error did not have a fair trial because of collusion between the State's attorney and the attorney for Miller.

Where an accomplice is used as a witness for the prosecution the widest latitude of cross-examination ought to be permitted. There is always the temptation for an accomplice to testify falsely, and the jury are entitled to know what inducements have been held out to him as a reward for his assistance to the prosecution, and anything else that in any way affects his credibility. This rule applies with even greater force where an accomplice sits at the trial table as a defendant and tricks his co-defendant into belief that he is going to work in harmony with him in the defense of the charge. In this case the court unduly restricted the cross-examination of Miller and Patterson, and if the conviction rested upon the uncorroborated testimony of these accomplices this error would require a reversal of the judgment. Under the circumstances, however, we think the error was harmless. The testimony of the accomplices was fully corroborated by other facts and circumstances

which point to the guilt of plaintiff in error. His explanation of the possession of this stolen property is not convincing and evidently the jury did not give it any credit.

It is contended that the court erred in permitting Miller to state the contents of letters sent to him by plaintiff in error. Miller testified that he destroyed all these letters, and that was sufficient basis for admission of secondary evidence. Furthermore, no objection was made to the admission of this evidence on the ground that it was not the best evidence.

It is also contended that the court erred in admitting the confessions of Miller. When they were admitted the court limited their effect to Miller and instructed the jury that they should not consider them in determining the question of the guilt of plaintiff in error. The name of plaintiff in error was stricken from these confessions, but certain statements were left in them which identified plaintiff in error as the party to whom Miller was referring. In admitting a written confession of a co-defendant everything should be stricken from it except that which refers to the defendant confessing. He ought not to be permitted to confess for another, notwithstanding the other is not named in the confession. When Miller's confessions were admitted in evidence he had not testified, and there is no showing that either the State's attorney or the court knew he was going to testify as he did. When he did testify he told the same things he had stated in his confessions. Independent of the testimony and the confessions of Miller, the evidence in this case shows clearly the guilt of plaintiff in error, so no harm was done by permitting these confessions to be read to the jury.

Objection is made to instruction No. 8, which tells the jury that before a defendant can avail himself of the defense of alibi the proof must cover the whole period of the commission of the crime, so as to render it impossible or highly improbable that the defendant could have committed

the act. This instruction has been approved in *People* v. *Schladweiler,* 315 Ill. 553.

Complaint is also made of instruction No. 9, which tells the jury that the testimony of an accomplice is competent evidence and the credibility of such an accomplice is for the jury to pass upon as they pass upon the credibility of any other witness. Exactly the same instruction was approved in *People* v. *Rees,* 268 Ill. 585.

There are minor objections to other instructions, but we do not consider that plaintiff in error was prejudiced by the giving of any of them. The refused instructions were properly refused because they did not state the law applicable to the case or were covered by other given instructions.

Much of the brief of plaintiff in error is devoted to the argument that the State's attorney and the attorney for Miller were in collusion and that they tricked plaintiff in error into placing in Miller confidence which he would not have placed in him if the latter had not been defending in good faith. The attorney who represented plaintiff in error in the trial court is a lawyer experienced in the trial of criminal cases, and he made no complaint at the time that either Miller or his attorney had abused his confidence in them. He did not indicate to the court that he was surprised at the testimony of Miller nor did he make a motion to withdraw a juror and continue the case. There was nothing presented to the trial court calling for his ruling upon this question, and so nothing is presented to us for review. As we have said, the guilt of plaintiff in error is clearly established by competent evidence in the record, and such errors as occurred on the trial were not of that character which deprived plaintiff in error of a fair and impartial trial.

The judgment of the circuit court of Lake county is affirmed.                    *Judgment affirmed.*