(No. 18348.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PATSY PARGONE, Plaintiff in Error. ·

*Opinion filed October 22, 1927—Rehearing denied Dec. 9, 1927.*

1. CRIMINAL LAW—*general rule as to when evidence of other offenses is admissible.* The rule which excludes on the trial of one charged with a criminal offense evidence of his commission of other crimes than that with which he is charged applies only to disconnected crimes, and if evidence offered has a tendency to prove the crime charged it is competent even though it also proves a separate, distinct offense, and the fact that a full investigation of the facts involved in the commission of a crime discloses the defendant's guilt of another crime does not limit the scope of the investigation.

2. SAME—*when proof of another offense is admissible in rape case.* In a prosecution for rape, evidence that the defendant, immediately after the rape, committed the crime against nature upon a companion of the prosecuting witness is competent as a part of the whole transaction, indicating the terrifying character of the conduct of the men in invading the home of the women, taking their property and assaulting their persons. (*People* v. *Gibson,* 255 Ill. 302, distinguished.)

3. SAME—*what is proper argument of State's attorney in denouncing defendant as guilty.* Argument of the State's attorney is not objectionable on the ground that he states his own personal belief in the defendant's guilt, where he merely denounces the defendant as guilty of the crime charged and in doing so bases his statement on the evidence of the witnesses for the prosecution, the truth of which he assumes and which constitutes direct evidence of guilt.

4. SAME—*what is a proper instruction as to alibi.* An instruction that before the defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the crime, so as to render it impossible or highly improb-

able that the defendant could have committed the act, is a proper instruction on the subject of an alibi where it is pertinent to the facts of the case and is not a mere statement of an abstract proposition of law.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM V. BROTHERS, Judge, presiding.

FRANK A. McDONNELL, (LESTER E. WILLIAMS, and ELWYN E. LONG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., EDWARD E. WILSON, and SAMUEL A. HOFFMAN, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Patsy Pargone was convicted of rape and sentenced to twenty-five years' imprisonment in the penitentiary. He has sued out a writ of error to review the record, assigning errors in the admission of evidence, the giving and refusing of instructions, the conduct of the State's attorney during the trial, and the sufficiency of the evidence.

Bessie Mikle, the complaining witness, is a colored woman who had been employed as a maid in Chicago at one place for more than five years but at the time of the commission of the crime was not working, having recently returned from a hospital. She occupied a three-room flat in Roosevelt road and another colored woman lived with her. On August 11, 1926, they were sitting in the living room at eleven o'clock at night when there was a knock at the door. To the question who was there, the answer "Bob" was made. Miss Mikle opened the door and the plaintiff in error walked in, followed by two other men, all armed and with weapons drawn. They demanded her money first of Miss Mikle, then of her companion, and took what money the women had as well as a wrist watch of Miss Mikle. They then tied the women's hands behind them,

their feet together, and laid them on the bed. There·was another person in the flat at the time—Samuel Evans, a colored boy employed as a porter in a pool-room and barber shop, who had called on Miss Mikle about a half hour before and at the time of these events was in the bathroom. The plaintiff in error pushed the bath-room door open, made Evans come out, tied his hands and feet and laid him on the bed, but afterward pulled him off the bed and pushed him under it. The men then ransacked the house, gathered together a large quantity of clothing, underwear, dresses and hats, which they packed in hat-boxes, suit-cases and clothes bags and later took away. They then came back to the bed on which the women were lying, cut the ropes which bound their feet, and the plaintiff in error had intercourse with Miss Mikle while one of his companions had intercourse with the other woman. The two men then exchanged women,· and the other man had intercourse with Miss Mikle while the plaintiff in error committed the crime against·nature with the other woman. The men then left, taking the clothes which they had packed with them, after threatening the victims if they complained to the police. This was the narrative testified to by the two women and Evans. The two women succeeded in releasing one another and then released Evans, who ran at once to the police station and reported the occurrence.· Later in August Miss Mikle went to the same police station in response to a telephone call and reported to the desk sergeant. While in the station she saw the plaintiff in error, recognized him as the man who had assaulted her, and upon her identification he was arrested. He was later identified by the other woman and Evans, and on the trial these three witnesses testified positively to his identity as the man who committed the crime. ·

. The defense was an alibi, in support of which Jennie Cerrato testified that she conducted a grocery store and meat market at 1753 Polk street and lived next door, at

327—30

1751. The plaintiff in error had formerly worked for her for $22 a week, but on August 11 had not been working for her for over two months because he had cut his leg with a cleaver. She had a daughter whose birthday was August 11 and for whom she was giving a party at her home that evening. In the afternoon she telephoned to the home of the plaintiff in error and gave a message to his mother that she wanted him to help her in the store that evening. The plaintiff in error, in response to the message, reached the store at about seven o'clock and Mrs. Cerrato left him in charge and went to her home, where the party was beginning at the same time. She was back at the store at eight and at ten o'clock and saw him there. At the latter visit she told him to prepare lunches for fifteen men who were working across the street at the Psychopathic Hospital. Mrs. Cerrato stayed at the store while the plaintiff in error took the lunches to the hospital. He delivered them at 11:00 o'clock and came back in about five minutes. Upon his return he cleaned the store and put things in the ice box. Mrs. Cerrato paid him six dollars for his services, and he left about 11:30, 11:45 or 12:00 o'clock.

Felix Greco, Mrs. Cerrato's son, testified that when the plaintiff in error reached the store at about 6:30 or 6:45 o'clock Greco gave him an apron and told him to stay at the store.

The plaintiff in error denied any connection with or knowledge of any of the events testified to for the prosecution or his presence at the place. He testified substantially to the same account as Mrs. Cerrato of his presence at the store and work there. He did not remember seeing Greco at the store. He got an apron from someone there but did not remember whether it was Mrs. Cerrato's son or not.

The contention that the evidence did not prove the plaintiff in error guilty beyond a reasonable doubt cannot be sustained, for if the three witnesses to the occurrence

are believed he is clearly guilty and the evidence showing the alibi cannot be true. The identification of the plaintiff in error was positive and was not shaken by anything shown in the record unless the evidence of the alibi was true.

Bessie Mikle testified that plaintiff in error had "a kind of a scar on one side of his nose," which aided her in making the identification. On cross-examination Evans testified that when he went to the police station the night of August 11 he described three men, among whom was the plaintiff in error, whom he described as follows: "I gave the weight of Patsy Pargone about 130 pounds, height five feet two, age about twenty-four. I gave the complexion and color of coat, light suit, gray cap. I told him that the smallest one had a mark on his nose across the top, between the eyes, over the nasal bone." On direct examination plaintiff in error testified: "I never had any scar on the right or left side of my face in my life. I have no scar across the nose on the nasal bone. I never had a scar across the nose. I never had a scar on the nose, through the nose, on my face, either temporarily or permanent. I have no scar on my face on either the left or the right side or across the bone of the nose, as indicated by Sam Evans, who testified here." The cross-examination developed the fact that plaintiff in error did have a mark on his nose, which he felt with his finger. He was then asked to and did step down and show the mark to the jury at the jury box. The facts that such a mark was on his nose that witnesses noted it at the time the crime was being committed, and that he first denied its existence and finally exhibited it to the jury, may have seriously discredited him with the jury, for it was a material matter about which he was testifying on the question of his identification.

The plaintiff in error contends that the evidence does not establish, beyond a reasonable doubt, that the crime of rape was committed, because it fails to show that force was used at the time the act of carnal intercourse oc-

curred. Reference is made to the fact that after the women were tied they were left lying on the bed while their assailants left them to ransack the house, after which they returned to the bed-room, untied the women's feet, pulled up their skirts, took off their step-ins and had intercourse with them; the fact that the plaintiff in error first asked Bessie Mikle if she had anything wrong in there, to which she answered no, and he told her he was going to have intercourse with her then, using the most obscene language; that she made no verbal objection or physical resistance; that the women, in testifying, repeated without hesitation the obscene words used; and the further facts that they opened their door at eleven o'clock at night to an unknown visitor who gave the name of Bob, and that Miss Mikle, while she called up the police station and told them she had been robbed, did not go to the police station to complain of the rape until from one day to a week or nine days afterward. From these circumstances the inference is drawn that the women were not virtuous and that there was no force or display of force at the time of the alleged rape. These circumstances were all proper to be argued to the jury as affecting the credibility of the witnesses and the effect of the force and violence which had already been used, but the question was still left for the jury to decide whether, in view of such force and violence and the condition in which the women were, they offered all the resistance they could offer to the attack made upon them.

It is contended that the court erred in admitting evidence that the plaintiff in error, immediately after the rape upon Bessie Mikle, committed the crime against nature upon the other woman, because this was a distinct, substantive offense other than that with which the plaintiff in error was charged. The rule which excludes on the trial of one charged with a criminal offense evidence of his commission of other crimes than that with which he is charged applies only to disconnected crimes. If evidence offered

has a tendency to prove the crime charged it is competent even though it also proves a separate, distinct offense. (*People* v. *Horn,* 309 Ill. 23.)    The fact that a full investigation of the facts involved in the commission of a crime discloses the defendant's guilt of another crime does not limit the scope of the investigation.    (*Hickam* v. *People,* 137 Ill. 75; *People* v. *Rardin,* 255 id. 9; *People* v. *Murphy,* 276 id. 304.)  In the *Hickam case* it was held competent to show another homicide and an assault which occurred in the same affray as the homicide for which the defendant was on trial.    In the *Rardin case* several defendants were jointly convicted of rape, and evidence was held properly received that one of them at the time of the rape also robbed the prosecutrix of money which she had in her handbag and tore open her waist and robbed her of gold coins which she carried in a small sack suspended by a cord worn about her neck, the opinion saying that it was not error to permit the prosecutrix to testify to all that took place from the time she left the railroad station in company with the defendants until she entered the Lewis home after the defendants had committed the crime and left her, as characterizing the acts and conduct of the defendants.    In the *Murphy case,* (an indictment for murder,) proof of a second homicide committed by the defendants a few minutes after the murder for which they were on trial, on the same occasion and a part of the same transaction, was held competent as a part of the *res gestæ,* the evidence as to the two homicides being inseparable.    In the present case the plaintiff in error associated himself with others in a conspiracy to commit robbery.    Whether or not rape was also the object of the conspirators originally, it became such object, and evidence of the sexual offenses committed at the same time by the two men upon both women was competent as a part of the whole transaction, indicating the terrifying character of the conduct of the men in the invasion of the home of the women, the taking of their property and the assaults

upon their persons. All the acts were part of one transaction. In the case of *People* v. *Gibson,* 255 Ill. 302, which is cited by the plaintiff in error, the defendant was tried upon a charge of having carnal intercourse with a girl under the age of consent, with her consent. Evidence was admitted that a few minutes later he committed the same offense on another girl. The two offenses had no connection with each other except that they were committed in the same place and each in the presence of the victim of the other offense. It was held error to admit the evidence, but the court also held that there was an exception to the rule that a separate offense cannot be proved in support of a prosecution for another offense when the two acts are so connected as to be parts of one transaction. In that case proof of one tends to establish the other, and for that reason the *Gibson case* is distinguished from this.

Objection was made to the argument of the State's attorney because it is said he stated to the jury his own personal belief in the plaintiff in error's guilt, and it is insisted that the judgment should be reversed for that reason. The State's attorney denounced the plaintiff in error as guilty of the crime charged, but in doing so he based his statement on the evidence of the witnesses for the prosecution, the truth of which he assumed. This was within the limit of legitimate argument. There was direct evidence of guilt, and the State's attorney was justified in commenting upon it and arguing its truth.

The first instruction to the jury was section 237 of the Criminal Code, which defines the crime of rape. It states the law correctly but not the law applicable to this case, except the first and last sentences. The crime of having carnal knowledge of a female person under sixteen years of age, either with or without her consent, not being charged in the indictment was not a matter for the consideration of the jury in this case and it was not proper to call their attention to that subject by an instruction. The

greater part of this instruction was devoted to a crime which was not charged in the indictment and which there was no evidence tending to prove. There was evidence tending to prove robbery and evidence tending to prove the crime against nature, and this instruction added to the confusion by submitting to the jury also the question of the crime of having carnal knowledge of a female person under the age of sixteen years with her consent, which there was no evidence tending to prove. It should not have been given.

The second instruction told the jury that before a defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the crime, so as to render it impossible or highly improbable that the defendant could have committed the act. The giving of this instruction was approved in *People* v. *Schladweiler*, 315 Ill. 553, and this case was followed in *People* v. *Durand*, 321 Ill. 526, and *People* v. *Thompson*, id. 594. In *People* v. *Braidman*, 323 Ill. 37, and *People* v. *Reno*, 324 id. 484, in which the same instruction was given, these former cases were distinguished, for the reason that the instruction was an abstract proposition of law not pertinent to the facts of the case. This cannot be said of the present case, and it was not error to give the instruction.

The sixth instruction was sections 582 and 583 of the Criminal Code, defining accessories and their liability as principals, and should not have been given, as there was no question in the case of the plaintiff in error's being an accessory. If he was guilty it was as principal.

While the first and sixth instructions should not have been given, there was nothing in them calculated to mislead the jury in the application of the law to the case. The jury could not have thought that either a statute applicable to carnal knowledge of a female under sixteen years of age with her consent, or a statute defining accessories and their liability or punishment, was a subject

for their consideration under the evidence in this case. Under the circumstances of this case there was nothing in these instructions which could have resulted in injury to the defendant, and the fact of giving them is therefore not ground for reversing the judgment. *People* v. *McIntosh,* 242 Ill. 602.

The judgment is affirmed.

*Judgment affirmed.*