The People of the State of Illinois, Plaintiff-Appellee, v. John W. Sessions, Defendant-Appellant.

**Gen. No. 51,032.**

First District, First Division.

April 15, 1968.

Adamowski, Newey & Riley, of Chicago (Francis X. Riley, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendant, John W. Sessions, prosecutes this appeal following a jury verdict finding him guilty of the crime of battery. The court entered judgment on the verdict and sentenced defendant to six months in the County Jail plus a $500 fine. No question is raised on the pleadings.

The complaint charged that the defendant committed the offense of battery on May 7, 1965, in that he ". . . did, without lawful or legal justification . . . knowingly and intentionally cause bodily harm by physical contact

with . . . complainant Paul J. Steffen, to-wit; struck Paul J. Steffen with his fists in violation of Chapter 38 Section 12–3 of the Illinois Revised Statute."

The facts are, for the most part, not in dispute. On May 7, 1965, at about 10:15 p. m., Mrs. Mary Steffen, who resided on premises which are litoral property on Lake Michigan in Winnetka, heard the horn of a police boat followed by the voice of an officer on the boat ordering someone to leave because they were trespassing on a private beach. Accompanied by her husband, the complainant, Paul J. Steffen, she left her house and proceeded down the stairs to the Steffens' private beach. From the beach she observed about fifteen youngsters, who were standing about three hundred feet away from her, standing in a line; the boys in the group were shouting obscenities at the police boat, and were also exposing their naked buttocks to the boat. Then four from the group began walking towards the Steffens, and crossed on to their property. At this point the four young men went through the same routine of exposing their back sides to the police boat. Mrs. Steffen sent her eldest son, Paul Steffen, Jr., to ask the boys to leave. One of the boys who had come on to the Steffens' property was the defendant, and another was George Hildreth. Young Steffen informed the boys that they were on private property and that they should leave, which they began to do. Then a girl, Rona Barth, appeared, and accused Mr. Steffen, in an obscene way, of being a police officer. Miss Barth then began to follow the young men off of the Steffens' property; however, she walked backwards, and constantly deluged Mrs. Steffen with a highly insulting stream of profanity, calling her, among other things a "f—ing woman" and a "f—mouth."

During this period, Mrs. Steffen walked along the beach with the Barth girl. When Miss Barth reached the marker line of the Steffens' property she called Mrs. Steffen a "s———mouth." Mrs. Steffen grabbed her by the

hair, and threatened to hold her until the police arrived. Mrs. Steffen held the girl by the hair for a few seconds and then let her go. The Barth girl then ran over to the other boys, who had by now left the Steffens' property, screaming to the defendant, "John, John!" The defendant and George Hildreth then came back on to the Steffens' property. Rona Barth aimed a punch at Mrs. Steffen, and when Mrs. Steffen raised her arms to defend herself, the defendant forced her arms downward. Mr. and Mrs. Steffen both testified that the defendant struck Mrs. Steffen at this time. Mr. Steffen then went to his wife's assistance, and the defendant, in inflammatory language, asked Mr. Steffen if he wanted to fight. Witnesses for the State testified that the first punch was thrown by the defendant; a witness for the defense stated that Mr. Steffen threw the first punch. In any event, it is uncontradicted that the complainant, after the first punch was thrown, grabbed Sessions around the neck, and they both fell to the ground with the defendant on top of Steffen. While he was on top of him, the defendant punched Mr. Steffen. There was also testimony to the effect that George Hildreth struck both Steffen and his son, Peter, during the altercation.

Mr. Steffen testified that the defendant was on top of him for approximately forty-five seconds, and that after the fracas he had bruises on his cheek and back. Some young friends of the Steffens' children, who had gathered on the Steffens' beach for a party that night, then pulled the defendant off of Mr. Steffen, and Sessions and Hildreth fled. Shortly thereafter they were picked up by the police and arrested. On June 15, 1965, the date of trial, the defendant moved for a severance of his complaint from two other complaints, one of which charged George Hildreth with battery, and the other of which charged Rona Barth with disorderly conduct. This motion was denied, and the defendant, Barth and Hildreth were all tried together. All three were found guilty,

the jury noting on the verdict as to Sessions that it recommended clemency.

The defendant contends on appeal that the court erred in failing to grant his motion for a severance; in admitting improper, irrelevant and inflammatory testimony; in sentencing the defendant to the maximum punishment under the Statute; and in not conducting a hearing in aggravation and mitigation, as provided by statute, since the defendant was statutorily entitled to consideration for probation.

■ ■ The defendant concedes that people jointly indicted are to be tried jointly, unless the individual defenses deprive one or more of the defendants of a fair trial. People v. Grilec, 2 Ill2d 538, 119 NE2d 232. Furthermore, the question as to whether a severance should be granted is largely one within the sound discretion of the trial court. People v. Connolly, 33 Ill2d 128, 210 NE2d 523. Where two or more defendants have not been joined together in a single charge the Criminal Code provides:

> The court may order 2 or more charges to be tried together if the offenses and the defendants could have been joined in a single charge. (Ill Rev Stats 1965, c 38, § 114–7.)

The situation under which offenses and defendants can be joined in a single charge is defined as follows:

> (a) Two or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are based on the same act or on 2 or more acts which are part of the same comprehensive transaction.

> (b) Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or in the same comprehensive transaction out of which

22

the offense or offenses arose. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count. (Ill Rev Stats 1965, c 38, § 111–4.)

■■ We agree with defendant's contention that two defendants cannot be convicted jointly at the same trial of separate and distinct offenses growing out of separate transactions. However, we cannot agree with his contention that there were "no related offenses" present in the instant case so that the doctrine of joinder would not apply. The offenses charged against the three defendants at trial arose out of one comprehensive transaction participated in by all three defendants. The evidence shows that the defendant's companion, Rona Barth, having trespassed on to the Steffens' private beach, directed vicious obscenities at Mrs. Steffen, causing the latter to grab her by the hair. The defendant and the Barth girl then attacked Mrs. Steffen, immediately following which the defendant and Hildreth both pummeled Mr. Steffen. The offenses charged all arose naturally out of a single comprehensive transaction of violence and lawlessness engineered by the defendant and his two companions, and therefore, the three of them were properly tried together. As the trial judge did not abuse his discretion in denying the defendant's motion for a severance we will not, on review, overrule his decision. People v. Patris, 360 Ill 596, 196 NE 806.

■■ The defendant next contends that the court erred in allowing certain evidence to be considered by the jury. He objects to the testimony that Hildreth assaulted the Steffens' son, Peter; that Rona Barth used foul language; and that Hildreth kicked Steffen. He claims that this evidence was irrelevant and inflammatory. We conclude that the evidence complained of was relevant to the charges placed against Hildreth and Barth who were properly being tried along with the defendant, and was, therefore, admissible. Where several defendants are tried

23

jointly, evidence which is competent against one or more of them is admissible. 23 CJS, Criminal Law, § 1032(4). Furthermore, upon examination of the record, we find that the trial judge was careful to limit the evidence introduced to the particular party implicated by it, and instructed the jury in consonance with this limitation. See People v. Stella, 344 Ill 589, 176 NE 909.

The defendant complains of evidence to the effect that four boys, among whom were the defendant and Hildreth, removed their clothing and exposed their buttocks to the police boat, while standing on the Steffens' property; that the defendant had been drinking beer prior to the altercation; and that the defendant used foul language both prior and subsequent to the incident in question, and after his arrest, threatened to kill Mr. and Mrs. Steffen. He argues that the foregoing evidence neither proved nor tended to prove the guilt of the defendant of the offense with which he was charged and was calculated only to prejudice the defendants with the jury.

 Evidence of other offenses committed by the accused generally is inadmissible; however, it is admissible where it is part of the res gestae, where it helps to disclose motive, intent, or design, or where it helps to establish the identity of the accused and places him in proximity to the time and place of the crime. People v. Lewerenz, 24 Ill2d 295, 181 NE2d 99; People v. Tranowski, 20 Ill2d 11, 169 NE2d 347. In a criminal prosecution the State may offer a continuous narrative of the events that formed the context of the arrest. People v. Alexander, 69 Ill App2d 27, 216 NE2d 180; People v. Johnson, 34 Ill2d 202, 215 NE2d 204. If this narrative includes connected crimes, proof of these crimes is permissible as part of the res gestae. People v. Pargone, 327 Ill 463, 158 NE 716; People v. Murphy, 276 Ill 304, 114 NE 609. The evidence introduced by the State in the instant case which tended to prove that the defendant had committed the crimes of indecent exposure and drinking under age,

and which showed the use of profanity and threats by him both prior and subsequent to his arrest, was admissible as part of a continuous narrative of the violence and lawlessness of the accused at and around the time that he committed the battery upon Mr. Steffen. The profanity and threats were relevant to the defendant's intent at the time of the battery, and the crimes shown were so closely connected to the battery that they were part of the res gestae.

The defendant's final objection in regard to the admission of evidence at the trial has to do with the testimony of Officer Caskey, who ordered the group of youngsters off of the beach near the Steffens' property prior to the incident in question. Defendant cites several instances of testimony by Caskey which he believes demonstrate that the officer was unworthy of belief by the jury. The credibility of Caskey's testimony was for the jury to determine. Furthermore, even if they had chosen to completely disbelieve him, sufficient evidence was introduced by other witnesses to sustain the jury's finding that the defendant was guilty beyond a reasonable doubt.

The defendant next contends that the sentence imposed by the trial judge was excessive. We express no opinion as to this contention because we have decided to remand the cause for the purpose of the court holding a hearing in aggravation and mitigation.

The record in the instant case does not disclose that a hearing in aggravation and mitigation was held prior to the imposition of sentence upon the defendant. Nor does the record disclose a hearing for the purpose of determining whether the defendant should have been admitted to probation, although Sessions was eligible for admission. (Ill Rev Stats 1965, c 38, § 1–7(b); Ill Rev Stats 1965, c 38, § 117–1.) The State argues that the Criminal Code does not make a hearing in aggravation and mitigation mandatory, and that the failure of the

25

record to disclose such a hearing is the fault of the defendant. We cannot agree.

The Criminal Code provides for a hearing for the purpose of determining the sentence to be imposed in the following provision:

> (g) Mitigation and Aggravation
>
> For the purpose of determining sentence to be imposed, the court shall, after conviction, consider the evidence, if any, received upon the trial and shall also hear and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the offender and may consider such evidence in aggravation or mitigation of the offense. (Ill Rev Stats 1965, c 38, § 1-7(g).)

 As pointed out in People v. Smice, 79 Ill App 2d 348, 223 NE2d 548, Illinois Appellate Courts have differed in their interpretation of the foregoing section as to whether it makes mandatory a hearing in aggravation and mitigation prior to the imposition of sentence. We agree with the conclusion of the court in Smice that the legislative spirit and intent in drafting section 1-7(g) was to make the hearing mandatory unless understandingly waived by the defendant and not requested by the State; "and that a transcript of the inquiries of the court and the answers of the defendant, if any, pertaining to such waiver should be made, as well as a transcript of the hearing, when not so waived by the defendant or when requested by the State." 79 Ill App2d at page 352. Under Supreme Court Rule 615(b)(4) (Ill Rev Stats 1967, c 110A, par 615(b)(4)) we possess the authority to reduce the sentence imposed by the trial court. It is essential, in light of the power of the reviewing court to reduce sentence, that this court have before it information as to the defendant's moral character, life, family, occupation and criminal record, if any, as provided for in section 1-7(g). People v. Evrard, 55 Ill App2d 270, 204

NE2d 777. It is apparent to us that the legislature intended both the trial court and the reviewing court to have relevant information to assure the imposition of a proper sentence. As the American Bar Association Project On Minimum Standards For Criminal Justice states in its tentative draft on "Sentencing Alternatives and Procedures," published in 1967, at page 205: . . . serious consequences turn on the correct resolution of the sentencing decision, and it is sheer folly to attempt such a decision without more information than is typically provided by the guilt determining process." A hearing in aggravation and mitigation is especially important when, as in the instant case, the offender is eligible for probation because rehabilitation is more likely to result from a carefully supervised period of probation than it is from a term in the state penitentiary. People v. Evrard, 55 Ill App2d 270, 204 NE2d 777.

Because the holding of a hearing in aggravation and mitigation is a mandatory procedure prior to the imposition of sentence, we hold that the State has the burden of showing that the defendant expressly and understandingly waived his right to such a hearing. See People v. Spaulding, 75 Ill App2d 278, 220 NE2d 331. The State has not carried its burden of showing that such a waiver was made in the instant case. Therefore, under the power vested in us by Supreme Court Rule 366 (Ill Rev Stats 1967, c 110A, § 366(a)(5)), we affirm the judgment on the verdict of the jury finding the defendant guilty. We reverse the sentence and remand the cause to the trial court so that the trial court can procure a probationary or presentence report, and thereupon consider the matter of probation. In the event that the facts warrant a denial of probation, the trial court should hold a hearing in aggravation and mitigation taking into consideration any evidence introduced at the hearing relevant to the moral character, life, family, occupation and criminal record, if any, of the defendant, as well as

■■■■■■■■■

the evidence received at the trial, and then pass sentence upon him.

Affirmed and remanded with directions.

ADESKO and MURPHY, JJ., concur.