THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TAKESHI IDA, Defendant-Appellant.

(No. 58369;

First District (2nd Division)—September 4, 1973.

Harvey J. Barnett, of Chicago, (Rosenthal & Schanfield, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Ronald E. Magnes, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Defendant was charged with the offense of petty theft under section 16—1(a)(1) of the Criminal Code of 1961. (Ill. Rev. Stat. (1971), ch. 38, sec. 16—1(a)(1).) After a bench trial, he was found guilty and fined $100. Defendant paid the fine and now appeals.

Defendant raises three issues on appeal. The first is whether the trial court erred in denying his motion for a directed finding at the close of the State's case-in-chief. The second is whether the State proved defendant guilty beyond a reasonable doubt. The third is whether he was deprived of his right to a hearing in mitigation of sentence and is, therefore, entitled to a new trial.

Two witnesses testified for the State. The first witness was one Craig Stevens, the credit manager of Musicraft, a hi-fi retail store at 48 E. Oak Street in Chicago. The witness testified that when defendant came into the store, he was carrying a shopping bag folded up under his arm. Defendant went upstairs to the second floor and came back down. The shopping bag was now in defendant's hand. The bag was bulging.

At that point, the witness' attention was momentarily distracted by his having to attend to a business detail in the store. About this time one of the other sales people wrote up an order for a sale of tapes and other items to another customer. The salesman went to the cash register to ring up the sale, returned, gave the customer his receipt, went back to put the merchandise in a bag, and discovered the merchandise was missing.

The witness testified that he looked to see if defendant was still in the store. He was, and the bag he was carrying was fuller. The witness testified that defendant saw the witness watching him, and defendant put the bag on the floor. Defendant started pacing back and forth in the store and walked toward the front of the store.

Then someone called the witness, at which time defendant started for the front door. The witness grabbed the bag of merchandise from the floor, put it on a counter, and started after defendant. Defendant ran down the street, and the witness could not keep up with him.

The merchandise in the bag consisted of tapes, some cables, and a four channel decoder. The decoder had been a display item on the second floor. The total value of the merchandise was less than $150. No

report of the incident was made to the police because the store still had the merchandise. The next day, defendant returned to the store with a police officer.

On cross-examination, the witness identified the bag defendant carried as a Blum's Vogue bag, and stated that he did not see defendant place any merchandise in the bag nor take any merchandise from the store. The witness did not physically take the bag from defendant. There was a receipt for tapes hanging out of the bag.

The arresting officer testified that, on the day after the incident, he met defendant on the street in front of the Musicraft Store pursuant to a telephone conversation defendant had had with the police that morning. Defendant told the officer that he had left some merchandise in the store the night before and was afraid to go back and claim it. He wanted the police to go into the store with him.

When defendant entered the store accompanied by the officer-witness, Mr. Stevens identified defendant as the person he had chased from the store the evening before. The officer placed defendant under arrest and advised him of his rights.

On cross-examination, the officer testified that, when defendant came up to him on the street that morning, defendant tried to explain what had happened, but the officer did not understand him fully.

At the conclusion of the officer's testimony, the State rested its case, whereupon defendant's attorney moved for a directed finding. The basis for the motion was that the State had failed to prove, beyond a reasonable doubt, that defendant intended permanently to deprive the store of the use of the merchandise. The motion was denied.

Defendant then testified in his own behalf. He testified that he had been in the store earlier on the day of the incident, during his lunch hour, at which time he had purchased four or five tapes and a magazine. He returned to work about 1:30 P.M. At about 5:00 P.M. defendant went back to the store. There was a sale in the store, and he had not had enough money with him during his noontime visit to take advantage of the sale. He returned to the store to buy more tapes and to look at the second-hand merchandise. Defendant testified that he was carrying a Blum's Vogue bag.

While he was on the second floor, a big black man put a knife to his back and forced defendant to put the amplifier in his bag. Defendant then placed the amplifier in his bag. The man told defendant to leave the store by himself.

When defendant got downstairs, he put his bag on the floor and was waiting for a chance to escape. He did not see Stevens looking at him.

Seeing his chance to escape, defendant fled the store. The black man pursued him out of the store, but defendant hid in an alley and the black man went past on the street.

Defendant then went east to Michigan Avenue to catch a bus to a friend's house. He talked to his friend and shortly thereafter flagged down a police car. The police would not help him because the incident had occurred in another district. Defendant returned to his friend's house where his friend telephoned the police, related defendant's account of the incident, and was advised to call police headquarters the following morning. Defendant called the police again the next day and the meeting between himself and the arresting officer was arranged.

On cross-examination, defendant testified that he had been in the store at least fifty times previously, and that, about a year and a half prior to the incident, he had purchased a stereo costing $1,000 from the store. He could not, however, identify the name of the salesman on the sales ticket.

Defendant's testimony was unclear as to whether or not, when he made his evening visit to the second floor, he was carrying with him the tapes which he had purchased on his noontime visit.

There were seven or eight sales personnel on the first floor, but defendant did not talk to any of them after he descended from the second floor because he was afraid of the black man. Defendant testified that the black man with the knife followed him out of the store.

The next witness to testify was defendant's friend, Chiko Inoye. He testified that he saw defendant at about 5:30 P.M. and that defendant told him what had happened; defendant's account then was the same as his account at trial. The State stipulated that the police had been called.

*OPINION*

Defendant's first contention is that the trial court erred in denying his motion for a directed finding at the close of the State's case-in-chief. This contention is without merit because the point has been waived. Once a defendant has introduced evidence in his defense, an objection to the denial of a motion for a directed finding, made at the close of the State's case-in-chief, is waived. *People v. Woods* (1973), 52 Ill.2d 48, 284 N.E.2d 286.

Defendant next contends that the evidence failed to establish his guilt beyond a reasonable doubt. The Illinois theft statute (Ill. Rev. Stat. 1971, ch. 38, sec. 16—1(a)(1)) provides:

"A person commits theft when he knowingly,

(a) obtains or exerts unauthorized control over the property of the owner; * * * and

(1) intends to deprive the owner permanently of the use or benefit of the property."

Defendant specifically argues that the evidence fails to prove beyond a reasonable doubt either that he exerted unauthorized control over the merchandise or that he had an intent permanently to deprive the owner of the merchandise. Rather, defendant contends that the evidence demonstrates a state of mind on his part incompatible with an intent to commit theft.

In a bench trial, the credibility of the witnesses is for the trial judge to determine. (*People v. Wright* (1972), 3 Ill.App.3d 262, 278 N.E.2d 175.) The decision of the trier of fact will not be disturbed unless it is based upon evidence which is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Daugherty* (1972), 1 Ill.App.3d 290, 274 N.E.2d 109.

■■ Here, the element of unauthorized control was admitted by defendant. By his own testimony, he placed the amplifier into the shopping bag which he had brought into the store, and he had unauthorized control of it until he placed the bag on the floor. Moreover, when he placed the amplifier into the bag, he did not intend to pay for it.

■■ Defendant's intent permanently to deprive the owner of the use or benefit of the property can be inferred from the facts and circumstances surrounding the alleged criminal act. (*People v. McClinton* (1972), 4 Ill.App.3d 253, 280 N.E.2d 795.) According to the State's witness (Stevens), defendant brought an empty shopping bag into the store and proceeded to the second floor. When he came down the stairs, his shopping bag was bulging. Defendant admitted having placed the amplifier in the bag while on the second floor. The trial judge totally disbelieved defendant's story about having been forced to steal the amplifier by a black man with a knife. In his final comment as to that testimony of defendant, the trial judge said: "The story is completely inconceivable. I believe he is lying. No question in my mind he is lying." We cannot say that the judge did not have a reasonable basis for disbelief. Defendant's testimony revealed that there were seven or eight sales personnel on the first floor who could have rendered assistance if alerted. Furthermore, defendant testified that the black man with the knife followed him out of the store; but Mr. Stevens, who pursued defendant out of the store, made no mention of a black man following the defendant. More significantly, when defendant, hiding in the alley,

allegedly saw the black man go past him on the street, so that the peril from the black man was over, defendant did not return to the store but proceeded to the house of his friend.

Therefore, we are of the opinion that the evidence adduced at trial provided the trial judge with an adequate basis upon which to find the defendant guilty beyond a reasonable doubt.

■■■ Defendant's final point is that he is entitled to a new trial because he was allegedly deprived of a hearing in mitigation. (We note in passing that, if defendant had been improperly deprived of a hearing in mitigation, he would be entitled, not to a new trial, but simply to a vacation of sentence and a remand for the hearing in mitigation. (See *People v. Sessions* (1968), 95 Ill.App.2d 17, 238 N.E.2d 94, and *People v. Smith* (1965), 62 Ill.App.2d 73, 210 N.E.2d 574.) As to the instant matter of aggravation and mitigation, the record indicates the following:

"The Court: There is a finding of guilty. Any record?

Asst. State's Attorney: No record.

Defense Counsel: The gentleman has no previous record whatsoever.

The Court: Because he has no record, I will make it $100 and no costs.

Defense Counsel: May I ask for court supervision?

The Court: No supervision. If he had come in and asked for court supervision and was honest with the Court, I would give it to him."

Defense counsel's statement is a statement in mitigation, and no request was made to present anything further in mitigation. Defense counsel in his brief indicates that he made no request for anything further in mitigation as a matter of strategy, because he felt that his better choice was to ask for supervision in lieu of a sentence which he did, but without success. Under these circumstances we cannot say that the defendant was improperly denied a hearing in mitigation. *People v. Muniz* (1965), 31 Ill.2d 130, 198 N.E.2d 855; *People v. Silva* (1972), 2 Ill.App.3d 117, 276 N.E.2d 29.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

STAMOS, P. J., and DOWNING, J., concur.