THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES B. WEST III, Defendant-Appellant.

Second District    No. 81-24

Opinion filed December 7, 1981.

R. Kent Heller, of Harlan Heller, Ltd., of Aurora, for appellant.

Dallas C. Ingemunson, State's Attorney, of Yorkville (Grant S. Wegner, Assistant State's Attorney, of counsel), for the People.

JUSTICE LINDBERG delivered the opinion of the court:

The defendant was charged with and found guilty of a misdemeanor theft, in violation of Section 16—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 16—1(a)(1)). A six-member Kendall County jury found that the defendant had taken, without permission, several new railroad ties belonging to the Burlington Northern Railroad. He was placed on supervision for nine months in order to pay a fine of $100 and court costs in the amount of $30.

The defendant is employed by T&L Manufacturing as a foreman. On June 13, 1980, West's employer asked him to get some railroad ties from the Burlington Northern Railroad Company. The defendant obtained a permit authorizing him to take "1/2 ties, more or less." Allegedly it was

explained to him at that time that a 1/2 tie is 3½ to 4 feet long. On June 19 the defendant went, as he had been directed, to the stretch of track between Earlville and Plano, and removed 18 long, allegedly unused ties from the right-of-way. An officer of the Oswego Police Department stopped the defendant and inquired about the ties he had on his truck. The defendant produced the permit authorizing him to take "1/2 used ties, more or less." When asked why he had taken whole ties, defendant replied that he would rather have the long ones to use as parking lot abutments. The defendant was informed of his *Miranda* rights and later charged with theft under $150.

The defendant alleges error in three instances: (1) he argues that the trial court erred in quashing two pretrial subpoenas; (2) he contends that the trial court erred in failing to strike the testimony of Phyllis Dolan, an employee of the railroad; and (3) he claims that the State did not present enough evidence to justify a verdict of guilty.

We address the subpoena issue first. The defendant's contention is that the trial court erred in quashing two pretrial subpoenas served by him upon the Burlington Northern. It is defendant's position that by quashing these subpoenas the trial court violated his sixth amendment right to compulsory process. We reject the notion that the defendant's right to compulsory process was violated and further find that the trial court's action was consistent with Illinois case law concerning the use of pretrial subpoenas.

The compulsory process clause is one of five provisions that the framers of the United States Constitution consolidated in the sixth amendment as a basic code of procedure for use in criminal trials. (*Washington v. Texas* (1967), 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920.) In 1967, the Supreme Court of the United States ended a 180-year silence concerning the compulsory process clause in its decision in *Washington*. In that case the court struck down a statute which provided that persons charged as principals, accomplices, or accessories in the same crime could not testify in behalf of one another. The court held that the statute violated the sixth amendment guarantee of compulsory process because it "denied him [the defendant] the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been *relevant and material to the defense.*" (Emphasis added.) *Washington v. Texas* (1967), 388 U.S. 14, 23, 18 L. Ed. 2d 1019, 1025, 87 S. Ct. 1920, 1925.

Subsequent cases applying the compulsory process clause also centered on the defendant's right to obtain and present relevant material testimony at trial. (See, for example, *Webb v. Texas* (1972), 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351 (threats by a trial judge which caused defendant's witness to refuse to appear violated the sixth amendment);

*United States v. Nobles* (1975), 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (the sixth amendment may not be invoked as a justification for presenting a half-truth).) In the instant case, no action of the trial judge has worked to deprive the defendant of his right to call witnesses at trial. Rather, the trial court ruled on the propriety of two pretrial subpoenas.

In *United States v. Nixon* (1974), 418 U.S. 683, 41 L. Ed. 2d 1039, 94 S. Ct. 3090, the Supreme Court of the United States set out a four-point test for determining whether the issuance of pretrial subpoenas is required by the sixth amendment. A party must show that (1) the material sought is evidentiary and relevant; (2) the material sought is not otherwise reasonably procurable by the exercise of due diligence in advance of trial; (3) that the moving party cannot properly prepare for trial without such production and the failure to obtain the materials sought may tend to unreasonably delay the trial; and (4) the application is made in good faith and is not intended as a general "fishing expedition." Neither of the subpoenas served upon the Burlington Northern by the defendant meets the *Nixon* standard.

The first subpoena demanded that the railroad produce a copy of the authorization given to defendant as well as any reports of any detectives or any statements taken by employees or agents of the railroad. A copy of the authorization was clearly otherwise procurable in advance of trial. The State provided the requested document one full month in advance of trial pursuant to the defendant's later motion for discovery. The demand for reports included no limitation as to time, place, or subject matter and thus are of questionable relevance and constituted a general "fishing expedition."

■■ The second subpoena sought as witnesses, the employees of the railroad who worked on the stretch of track involved in this case and further commanded that payroll records for one week prior to June 19, 1980, and "all diaries, summaries, reports, notes, or memoranda of crew foreman, supervisory personnel, or section chiefs regarding this stretch of railroad" be produced. Such a broad demand is of questionable relevance. Moreover, it seems clear that it was intended as a catch-all request thus violating the prohibitions set out in *Nixon*. A similar demand was denied by the Supreme Court in the case of *Bowman Dairy Co. v. United States* (1951), 341 U.S. 214, 95 L. Ed. 879, 71 S. Ct. 675. We reject defendant's contention that the trial court held that he was not entitled under any circumstances to cause pretrial subpoenas to issue. In its order quashing defendant's subpoenas the court found that "the defendant has no right to subpoena the Burlington Northern as heretofore subpoenaed." Argument which had taken place before the court indicated that the materials sought by the defendant would be obtainable by other methods. It appears that

the court found the form of the subpoena unreasonable and the evidence sought of questionable relevance and therefore quashed the subpoenas.

We further note that the order of the trial court is not inconsistent with Illinois case law concerning the use of pretrial subpoenas. The defendant relies heavily on our supreme court's holding in *People ex rel. Fisher v. Carey* (1979), 77 Ill. 2d 259, 396 N.E.2d 17. We believe this reliance is misplaced. In *Fisher*, the supreme court rejected the theory that a pretrial subpoena can issue only if defendant has unsuccessfully attempted to obtain the material sought through discovery. *Fisher* did not outline an absolute right to resort to subpoena. The court noted and applied the *Nixon* standard just as the trial court did in the case at bar. Of course, the *Nixon* and *Fisher* opinions were limited to an examination of the circumstances which trigger a sixth amendment right to subpoenas *duces tecum*. We note that there is no general constitutional right to depose witnesses prior to trial. *Melancon v. Superior Court* (1954), 42 Cal. 2d 698, 268 P.2d 1050.

Nor are we swayed by defendant's interpretation of *People v. Harris* (1980), 91 Ill. App. 3d 1, 413 N.E.2d 1369. That case was not, as defendant claims, "identical to the case at bar." In *Harris*, the defendant, charged with a misdemeanor, caused a subpoena to be issued to the sheriff demanding production of certain documents. The sheriff denied the subpoena and was held in contempt of court. A careful reading of the opinion reveals that the decision turned upon the fact that no motion to quash had ever been made and that the subpoena was still in effect. The court in *Harris* held that parties may not ignore or defy a valid subpoena. It did not hold that subpoenas once issued may never be quashed, or that the court is without authority to review the propriety of a subpoena.

We turn next to the evidentiary issue. Defendant's objection to Phyllis Dolan's testimony centers on the fact that she attempted to testify concerning her general habit as to the issuance of permits rather than testifying to the particular facts involved in this case. Although Mrs. Dolan testified that she usually informed applicants that a half-tie was 3½ to 4 feet long and that she was not able to issue a permit for long ties, she admitted during cross-examination that she had no detailed recollection of her conversation with the defendant. Later, in the presence of the jury, she misidentified a court-appointed interpreter as the defendant.

The defendant correctly points out that evidence of habit or general practice is not admissible as proof of behavior and conformity with that habit on a specific occasion. (*Goetz v. County Mutual Insurance Co.* (1975), 28 Ill. App. 3d 154, 328 N.E.2d 109; *City of Salem v. Webster* (1901), 192 Ill. 369, 61 N.E. 323.) To do so constitutes error. However, it is not the policy of the appellate court to reverse a jury verdict merely

because error has been committed. (*Taylor Coal Co. v. Dawes* (1906), 220 Ill. 145, 77 N.E. 131.) Where there is other sufficient, competent evidence establishing defendant's guilt beyond a reasonable doubt and it does not appear that the error complained of was the basis of the jury's verdict, that error is harmless and reversal is not required. (*People v. Butler* (1978), 63 Ill. App. 3d 132, 379 N.E.2d 703.) Generally, a reviewing court will not reverse a jury verdict due to an error in the admission of evidence unless it appears that there was a denial of real justice. (*People v. Sanchez* (1973), 11 Ill. App. 3d 1079, 297 N.E.2d 230.) We find that the court's failure to strike Mrs. Dolan's testimony was such harmless error.

■■ The record shows that most of the defense counsel's objections to her testimony were sustained. Further, the defense counsel conducted a cross-examination which revealed to the jury that Mrs. Dolan had no definite recollection of her conversation with the defendant. Finally, she was completely unable to identify the defendant in court. It is unlikely that the jury placed any particular weight on her testimony, given this rather thorough impeachment.

In addition, there was sufficient other evidence upon which the jury could have based its verdict. The subject of Mrs. Dolan's testimony was the permit issued to the defendant, and the meaning of the terms used therein. Several other witnesses testified as to the contents of that document and the meaning of its terms.

Moreover, the admission of Mrs. Dolan's testimony did not result in any substantial prejudice to the defendant and therefore reversal is not appropriate. Trial errors do not generally require reversal if the defendant has had substantial justice. *People v. Bean* (1974), 17 Ill. App. 3d 377, 308 N.E.2d 334.

The defendant also argues that the State did not present sufficient evidence to justify a finding of guilt beyond a reasonable doubt. It is defendant's contention that the evidence presented to the jury was insufficient to establish that the Burlington Northern had not abandoned the ties.

As a general rule a reviewing court will not reverse a conviction unless the evidence presented to the jury was so improbable or unreasonable as to raise a serious doubt of the defendant's guilt. (*People v. Guzzardo* (1979), 69 Ill. App. 3d 252, 387 N.E.2d 896; *People v. Bullock* (1970), 123 Ill. App. 2d 30, 259 N.E.2d 641.) Where it can be said that the State presented evidence sufficient to establish guilt beyond a reasonable doubt, the verdict will not be disturbed. *People v. Goodpaster* (1966), 35 Ill. 2d 478, *cert. denied* (1967), 386 U.S. 967, 18 L. Ed. 2d 120, 87 S. Ct. 1051.

Further, a verdict of guilty is not subject to reversal simply because the jury chose to believe the evidence presented by the prosecutor.

*(People v. Pelegri* (1968), 39 Ill. 2d 568, 237 N.E.2d 453; *People v. Crocker* (1978), 58 Ill. App. 3d 328, 373 N.E.2d 621.) When the evidence presented is contradictory, it is within the province of the jury to assess the credibility of the witnesses and weigh the evidence accordingly. *People v. Greeson* (1975), 28 Ill. App. 3d 94, 327 N.E.2d 605.

In this case the jury heard the defendant testify that he found the whole ties on the same stretch of track as the half-ties and that the whole ties were partially covered with gravel and underneath several cut ties. The jury also heard the testimony of Eugene Bratcher, a railroad employee, to the effect that occasionally during track repairs, the crews leave extra ties alongside the rail bed to be picked up later. Mr. Bratcher also noted that there is a report made daily to a track inspector as to the number and location of these excess ties.

The testimony of Mr. Bratcher is sufficient, if believed by the jury, to establish the Burlington Northern's intention to continue in possession of the ties and to justify the jury's finding that the ties had not been abandoned. The defendant's account is entitled to no special deference or particular weight. (*People v. Greeson* (1975), 28 Ill. App. 3d 94, 327 N.E.2d 605.) It is for the jury to resolve conflicting allegations of fact. It seems to have done so in this case, and we are not inclined to disturb its finding.

■■ Defendant further contends that his conviction must be overturned since the State failed to prove that he acted with the requisite intent to permanently deprive another of his property. The defendant claims, and testified in court, that he believed he was entitled to take the longer whole ties. For support in his contention that he lacked the requisite mental state the defendant relies on the case of *People v. Baddeley* (1969), 106 Ill. App. 2d 154, 245 N.E.2d 593, in which the court ruled that a defendant's *bona fide* belief, even though mistakenly held, that he has a right or claim to another's property negates the intent to deprive an owner permanently of his property. However, the *Baddeley* decision also recognized that it is the jury's duty to judge whether the belief held was actually *bona fide* in nature. In this case there was sufficient evidence presented to the jury to support its apparent conclusion that Mr. West did not have a *bona fide* belief that he was entitled to the whole ties. The defendant himself testified that the contract he signed referred to "1/2 used ties, more or less."

In the case of *People v. Greeson* (1975), 28 Ill. App. 3d 94, 327 N.E.2d 605, a defendant made a similar argument claiming that he believed that he had the authority to remove certain typewriters and that he therefore lacked a requisite intent. In upholding the jury's verdict of guilty the court noted:

> "Where an authorized control of the property of another is

admitted, the defendant's intent to permanently deprive the owner of the property may be inferred from the facts and the circumstances surrounding the alleged criminal act. (*People v. Carr* 16 Ill. App. 3d 76, 305 N.E.2d 554 (1st Dist. 1973); *People v. Ida*, 14 Ill. App. 3d 407, 302 N.E.2d 713 (1st Dist. 1973).) We believe that the question of whether defendant knew his control was unauthorized can similarly be established by inference from the surrounding facts. Both questions involve defendant's state of mind, his knowledge and intent, and the only evidence possible, other than defendant's own testimony, must be what reasonable men would infer from surrounding circumstances." *People v. Greeson* (1975), 28 Ill. App. 3d 94, 96-97, 327 N.E.2d 605, 606.

The evidence presented to the jury in this case seems sufficient to support a judgment of guilty and is neither so improbable nor so unsatisfactory as to raise serious doubt of the defendant's guilt.

For the reasons noted, the judgment of the Circuit Court of Kendall County is affirmed.

Affirmed.

NASH and REINHARD, JJ., concur.