THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL COBB, Defendant-Appellant.

First District (2nd Division)    No. 80-572

Opinion filed June 16, 1981.

Ralph Ruebner and Donald B. Mackay, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Richard F. Burke and Dean C. Morask, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

A jury found defendant Michael Cobb guilty of murder (Ill. Rev. Stat. 1978 Supp., ch. 38, par. 9—1(a)) and armed violence (Ill. Rev. Stat. 1977, ch. 38, par. 33A—2) on the basis that defendant was accountable (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c)) for the shooting death of Leon

Buchanan.[1] The circuit court sentenced defendant to two concurrent 25-year terms. On appeal defendant asks this court to determine (1) whether he was proved guilty beyond a reasonable doubt and (2) whether various prosecutorial comments constitute reversible error.

At about midnight on January 29, 1979, Leon Buchanan was shot while in the breezeway of an apartment building at 4848 South State Street, Chicago, Illinois. He died as a result of the wounds he received.

Tommy Banks, a witness for the State, testified at trial that at the time of the shooting he lived in an apartment at the same building. He stated that at about 10:45 that evening he, defendant, Eric Stanley, a man named "Doc," and Tyrone Braboy loitered within a vacant apartment. Stanley had a shotgun, and defendant had a .22-caliber handgun. The quintet went downstairs to the ground floor of the building. There, Banks broke all the lights near the stairway in accordance with Stanley's direction. As Banks began to return up the stairs, he heard defendant say, "Blow him, blow him, he'll trick." Stanley then unsuccessfully attempted to discharge the shotgun toward the breezeway. Banks saw Stanley release the gun's safety. As Banks proceeded further up the stairs, he heard the shotgun discharge.

Charles Seanior testified for the State that he also lived in the building. On the night of the shooting he saw defendant, Stanley, Banks and Braboy leave an apartment in the building. Defendant had a .22-caliber pistol, and Stanley had a shotgun. Stanley told him they "were getting ready to roll and go out." Stanley also said that Seanior should come downstairs after the sound of a gunshot is heard. Seanior went to another apartment as the group made its way downstairs. Sometime after 11 p.m., Seanior heard a shotgun blast, followed by the sound of footsteps ascending the stairway. He testified he saw Stanley carrying a shotgun while defendant carried a handgun. Seanior then went downstairs and saw Buchanan lying dead within the breezeway.

A Chicago police officer testified that after defendant surrendered himself to police, defendant led the officer to the building's 14th floor electrical closet. From inside the closet police recovered a 12-gauge shotgun and a .22-caliber pistol. The shotgun contained two live shells and one expended cartridge. The police officer testified further that there exists a clear, unobstructed view from the ground floor of the stairwell to the breezeway.

A police firearms examiner testified the expended shell fragment recovered from the victim's skull could have been fired from the shotgun found in the building's electrical closet.

---

[1] A codefendant, Eric Stanley, was tried simultaneously by a separate jury. His convictions on murder and armed violence charges were affirmed by this court in *People v. Stanley* (1981), 95 Ill. App. 3d 910, 420 N.E.2d 727.

Randy Barnett, an assistant state's attorney who interviewed defendant after the latter surrendered, testified regarding a transcript of defendant's interview statement. Barnett testified defendant stated that after Banks had broken the ground floor lights, defendant "was fixing to shoot" the .22-caliber pistol. Defendant stated, however, that his attempts to do so were unsuccessful. Ten minutes later defendant saw Buchanan approach the building. Defendant saw Stanley first attempt to discharge the shotgun, then release the safety, re-aim the weapon, and fire it once. He and Stanley then ran upstairs to secrete the shotgun. Defendant offered no evidence.

## I

■■ Defendant contends that the State failed to prove him guilty of murder and armed violence beyond a reasonable doubt. From our review of the record, we are satisfied that the evidence of defendant's guilt is overwhelming.

A person is accountable for the acts of another where:

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1977, ch. 38, par. 5—2(c).)

Furthermore, "[w]hile it is true that mere presence or negative acquiescence is not enough to constitute a person a principal, one may aid and abet without actively participating in the overt act and if the proof shows that a person was present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the crime." (*People v. Washington* (1962), 26 Ill. 2d 207, 209, 186 N.E.2d 259; see also *People v. Balls* (1981), 95 Ill. App. 3d 70, 75, 419 N.E.2d 571.) Under the facts of this case, defendant is accountable for the shooting death of Buchanan.

■■ Banks testified at trial that defendant told Stanley, "Blow him, blow him, he'll trick," as Buchanan approached the breezeway. Defendant and Banks ran upstairs to secrete the shotgun after Buchanan was shot. Accomplice testimony is sufficient to convict (*People v. Nickson* (1978), 58 Ill. App. 3d 470, 480, 374 N.E.2d 804, *appeal denied* (1978), 71 Ill. 2d 612) even where it is uncorroborated if that testimony is positive and credible (*People v. Novotny* (1968), 41 Ill. 2d 401, 411, 244 N.E.2d 182). The determination of Banks' credibility and the weight to be accorded his testimony are judgments well within the fact finder's province. Here, the

jury chose to believe Banks' testimony. The evidence at trial, when viewed in its entirety, is not "so improbable as to justify a reasonable doubt of the accused's guilt." *People v. Owens* (1976), 65 Ill. 2d 83, 90, 357 N.E.2d 465, *cert. denied* (1977), 430 U.S. 955, 51 L. Ed. 2d 805, 97 S. Ct. 1600.

## II

Defendant also contends remarks made during the assistant state's attorney's rebuttal argument constitute reversible error. The State responds that defendant waived the right of review of some remarks by his failure to object during trial and that other remarks were either cured or constituted harmless error.

Defendant first challenges the remark, "The facts of this case are uncontradicted." The trial court sustained defendant's objection to this remark.

■■ Comment upon the uncontradicted nature of testimony is considered a permissible summary of the evidence. (*People v. Yancey* (1978), 57 Ill. App. 3d 256, 264, 372 N.E.2d 1069.) And assuming *arguendo* that the remark was not supported by the evidence, the trial court promptly sustained defendant's objection while in the jury's presence. Under the record here, the remark, if error, was cured by the trial court's action. (See *People v. Baptist* (1979), 76 Ill. 2d 19, 29-30, 389 N.E.2d 1200; *People v. Ashley* (1960), 18 Ill. 2d 272, 281-83, 164 N.E.2d 70, *cert. denied* (1960), 363 U.S. 815, 4 L. Ed. 2d 1157, 80 S. Ct. 1255.) This remark is not tantamount to a comment upon defendant's failure to testify.

The assistant state's attorney also stated in regard to Banks' credibility, "he deserves credit for what he did after [his participation], and that was to stand up, to come into court, at no minor risk * * *." The court sustained defendant's objection to the remark. If the remark was error, the error was cured.

■■ The prosecutor also referred to "crime on the street." The defendant's counsel did not object to the reference. Error in closing argument may be waived by failure to make a timely objection thereto. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358, 418 N.E.2d 739; see *People v. Stanley* (1981), 95 Ill. App. 3d 910, 914.) Furthermore, this and other statements in the aggregate did not, in our opinion, amount to a significant factor affecting the jury's determination because the evidence of guilt is overwhelming. (See *People v. Ashley* (1960), 18 Ill. 2d 272, 282; see, *e.g., People v. Galloway* (1979), 74 Ill. App. 3d 624, 628-29, 393 N.E.2d 608 (statements regarding evil results of crime, wickedness of defendant, fearless administration of the law, and possible results upon defendant's release are not

reversible error when based upon inferences from the evidence).) In sum, we are satisfied no prejudicial error was committed.

In accordance with these reasons, we affirm defendant's convictions.

Affirmed.

STAMOS and PERLIN, JJ., concur.