THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHNNY McKIBBINS, Defendant-Appellant.

First District (3rd Division)    No. 79-2414

Opinion filed September 23, 1981.

Ralph Ruebner and Nancy Abrahams, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Lawrence T. Krulewich, Assistant State's Attorneys, of counsel), for the People.

Miss JUSTICE McGILLICUDDY delivered the opinion of the court:

Following a jury trial, the defendant, Johnny McKibbins, was convicted of murder, armed robbery and armed violence. He was sentenced to concurrent terms of 40 years imprisonment for murder and 30 years imprisonment for armed robbery. No sentence was imposed for the armed violence conviction.

The defendant appeals from these convictions and argues: (1) that he was deprived of a fair trial by lengthy testimony and argument concerning a subsequent offense; (2) that the trial court erred in denying defendant's motion to preclude evidence of certain of defendant's prior convictions; and (3) that the sentences imposed by the trial court were excessive.

Prior to trial, the defendant presented two motions in limine to preclude evidence of his involvement in an armed robbery that occurred after the offense for which he was being tried and to preclude evidence of his prior theft convictions. The trial judge denied the former motion because the evidence related to the circumstances of the defendant's arrest on the instant charges and because that evidence related to motive, custom and design. The defendant's second motion was denied because the trial court concluded that the evidence of the defendant's 20 prior theft convictions related to the defendant's credibility.

The defendant was charged by information with the armed robbery and murder of Clinton Hutchinson that occurred on February 14, 1979.

Emma Hutchinson, the victim's wife, testified that her husband was employed at Mid City Parking located at Clinton Street and Milwaukee Avenue in Chicago. When her husband left for work at about 5 a.m. on February 14, 1979, he was carrying four dollars in change and a French coin dated 1811 which had a hole in the center. Mrs. Hutchinson identified the coin and pictures of her husband.

Investigator Dennis Murphy, a Chicago police officer, testified that on February 14, 1979, he was assigned to investigate the homicide of Clinton Hutchinson. He found the victim on the floor of a small shack located in the middle of the parking lot. The victim had been shot in the right temple. His pockets were turned inside out and the knees of the victim's pants were soiled. Handcuffs found on the victim's wrists were made in Taiwan and had the word "Stop" stamped on them. Investigator Murphy identified the handcuffs at trial.

Investigator Murphy further testified that on February 16, 1979, he was assigned to investigate a police shooting at a jewelry store located at 1429 Milwaukee Avenue. While at the store, he spoke to Officer James Kehoe, who showed him a French coin with a hole drilled in the center. The coin had been taken from one of the offenders. At the police station Investigator Murphy questioned the defendant, who was one of the jewelry store offenders. The defendant denied any knowledge of the Hutchinson homicide but did give a statement regarding the jewelry store incident and the shooting of the police officer.

On February 17, 1979, the defendant gave a second statement to Investigator Murphy. The defendant stated that on February 14, 1979, he was driving his car and he picked up Matthews and Brown and drove to 305 North Milwaukee Avenue to rob a parking lot. Matthews and Brown had handguns and handcuffs. The defendant parked his car on the street near the lot, while the other two men went into the parking lot shack with guns. A short while later, Brown and Matthews ran back to the car; and as the defendant drove away, Matthews stated he was "pissed off" because there wasn't enough money and because "they had to burn the guy." Brown showed the defendant a coin that he had taken. The coin had a hole in it.

Assistant State's Attorney Jay Magnuson corroborated the testimony of Investigator Murphy regarding the statement given by the defendant on February 17, 1979, at 4 a.m.

Officer William Jaconetti of the Chicago Police Department testified that on February 16, 1979, while on foot patrol, he responded to a robbery call at Phillips Jewelers located at 1429 North Milwaukee Avenue. When he arrived at the store, he saw James Matthews, who was standing to the left side of the front door, pull a revolver from his waistband and point it at the back of Officer Louis Trafillio's head. Jaconetti testified that he told Matthews to "hold it" but Matthews turned and fired his gun at Jaconetti. The bullet blew the zipper off Jaconetti's jacket, travelled through the lining and exited from the side panel. Jaconetti, in return, fired his gun and struck Matthews. He then peered through the store window and saw the defendant crouched behind a counter. He ordered the defendant to throw out his gun. The defendant did so and was arrested. Officer

Jaconetti testified that there were nine hostages lying on the floor behind the counters and in the back room of the jewelry store.

Harold Phillips, the co-owner of Phillips Jewelers, testified that three men entered the store at about 10:50 a.m. on February 16, 1979. Brown held a handgun and announced a holdup. The defendant and the third man went by the watch and ring counters and began emptying the trays of jewelry into bags. The store employees and customers were ordered to lie on the floor. Phillips got down on the floor, and about five minutes later, heard gunshots. He stood up when the police arrived.

Officer James Kehoe of the Chicago Police Department, testified that he also responded to the robbery alarm at 1429 North Milwaukee on February 16, 1979. He heard the radio call that shots had been fired and that a policeman had been shot. When Kehoe arrived, Matthews was lying on the ground outside the store with a gun in his hand. Kehoe recovered the gun and then went inside the store. The defendant and Brown were standing behind counters. The defendant had his hands raised. Two ski caps and a pair of handcuffs were on a jewelry counter and a gun, brown bag, ski cap and second set of handcuffs were on the floor. The bag contained United States currency, watches, rings, a handkerchief, a white work glove and a surgical glove. The two pairs of handcuffs had the word "Stop," the manufacturer's name, on them. When Officer Kehoe searched Brown before putting him in the police wagon, he found a foreign coin that had a hole in it.

Investigator William Baldree of the Chicago Police Department testified that he was assigned to the Hutchinson case on February 17, 1979. He interviewed the defendant at approximately 1:30 a.m. on that date regarding the defendant's involvement in the case. The statement given by the defendant to Investigator Baldree coincided with the statement given to Investigator Murphy. The defendant also told Investigator Baldree that Matthews and Brown had taken two guns and a pair of handcuffs into the parking lot shack.

For the defense, Stephen Murphy, an investigator for the Public Defender's Office, testified that on the morning of the day he was to testify at the defendant's trial, he went to two novelty stores in downtown Chicago and purchased a pair of handcuffs at one of the stores. There were 18 pairs of handcuffs available for purchase at the stores and all were made in Taiwan and had the word "Stop" imprinted on them.

Based on the evidence described above, the jury returned verdicts of guilty on all counts.

The defendant's initial argument on appeal is that he was deprived of a fair trial due to lengthy testimony and argument concerning the jewelry store armed robbery. The defendant contends that his trial on the charges of murder and armed robbery of Clinton Hutchinson became an adjudi-

cation of the jewelry store robbery due to the extensive testimony by the police officers, jewelry store owner, and the opening statement and closing argument of the prosecution concerning the other crime.

Generally, evidence of other crimes is inadmissible as proof of guilt for the offense charged. (*E.g., People v. Harris* (1980), 91 Ill. App. 3d 112, 414 N.E.2d 755; *People v. Wallace* (1980), 90 Ill. App. 3d 960, 414 N.E.2d 99.) However, such evidence is admissible when relevant for any purpose other than to show propensity for crime. (*E. g., People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200; *People v. Gonzales* (1978), 60 Ill. App. 3d 980, 377 N.E.2d 91.) As stated in *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489, 492-93:

> "Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense. [Citations.]"

Evidence of other crimes also is admissible when relevant to police investigation of the offense at issue where such investigatory procedures involved an integral part of the circumstances of the defendant's arrest. (*People v. Davis* (1981), 93 Ill. App. 3d 187, 416 N.E.2d 1179.) In determining the admissibility of evidence which informs the jury of a crime independent of or disconnected from the offense with which an accused is being tried, it is necessary to weigh the probative value and strength of such evidence against its probable prejudicial effects. Where the prejudicial impact of evidence concerning an independent crime outweighs its probative value in establishing the guilt of the accused, the evidence shall be excluded. *People v. Diaz* (1979), 78 Ill. App. 3d 277, 397 N.E.2d 148.

The State contends that evidence of the jewelry store robbery was admissible to demonstrate modus operandi and to corroborate the defendant's confession. The State argues that the evidence concerning the robbery and murder of Hutchinson and the jewelry store robbery demonstrated the following striking similarities: involvement by the same three men, use of the same brand of handcuffs, same treatment of victims by ordering them to lie on the floor, and presence of the coin belonging to the murder victim at the scene of the jewelry store robbery.

■■■ Proof of the existence of a common scheme or design and modus operandi requires the existence of similarities so striking that the two crimes appear distinctively identical and can be earmarked as the crime of one man. (*People v. Connors* (1980), 82 Ill. App. 3d 312, 402 N.E.2d 773.) In *People v. McDonald* and *People v. Gonzales*, cases relied upon by the State, the defendants' modus operandi were proved by numerous

distinctive similarities. We have reviewed the evidence presented in the instant case and do not find that the similarities argued by the State were so distinctive that they earmarked the defendant as the offender in both offenses. We note that the crimes are actually dissimilar because only two men entered the parking lot shack while three men entered the jewelry store. The parking lot shack was occupied by one person, the victim, while the owner, employees and customers were present in the jewelry store. The State surmises that evidence that Hutchinson's pants were soiled at the knees is evidence of the fact that he could have been ordered to lie on the floor before he was killed. This, the State contends, was similar to the treatment of the jewelry store occupants who were also ordered to lie on the floor. This conjecture by the State is unconvincing proof of common design. As the evidence of the jewelry store robbery was not so closely connected with the crime for which the defendant was being tried, it did not tend to prove his guilt thereof (*People v. Connors*) and was thus inadmissible under the modus operandi exception.

■■ We also reject the State's argument that the evidence pertaining to the jewelry store robbery was admissible to corroborate the defendant's confession as to the Hutchinson murder and robbery. The evidence of the jewelry store robbery merely corroborated the defendant's confession as to that armed robbery. We believe the defendant's confession concerning his involvement in the Hutchinson murder and robbery was adequately corroborated by testimony that the French coin belonging to Hutchinson was taken by the police officers from Brown at the scene of the jewelry store robbery. Thus, the extensive testimony regarding the jewelry store robbery was unnecessary.

We believe that a limited amount of evidence of the jewelry store robbery could have been properly admitted in the case at bar to show the circumstances of the defendant's arrest and the police investigation of the offense at issue. (*People v. Davis*.) Such a ruling was made in the factually similar case of *People v. Diaz*. The defendant in *Diaz* was being tried for the armed robbery of a tavern. A gun was taken from the tavern owner during that robbery. The defendant was subsequently arrested after an unsuccessful robbery of a pregnant woman. The gun taken in the first robbery was found in the purse of the defendant's accomplice after the second offense. The court in *Diaz* held that the testimony concerning the second offense was relevant to show the circumstances of the defendant's arrest and that the weapon used therein was the one stolen during the commission of the crime at issue. Lengthy testimony regarding the subsequent crime and the defendant's threats to the pregnant woman and her unborn child were found to be inadmissible because that testimony was not so closely connected with the main issue of the defendant's guilt

of the crime for which he was being tried. The court held that the emphasis of the testimony concerning the subsequent offense and threats could only have inflamed the jury and prejudiced the defendant from receiving a fair trial.

■■ Similarly, we believe testimony regarding the defendant's arrest, the discovery of the French coin on Brown's person, and the connection of that coin to the Hutchinson murder and robbery was admissible in the case at bar. However, we also believe that the extensive and detailed testimony and admission of exhibits regarding the armed robbery of the jewelry store were unnecessary and improper. The prejudicial impact of that evidence, including testimony of the shooting of Officer Jaconetti and the taking of hostages, clearly outweighed its probative value in establishing the defendant's guilt of the crime for which he was being tried. Therefore, we reverse his convictions and remand the case for a new trial.

The defendant's second argument on appeal is that the trial court erred in denying defendant's motion to preclude evidence of certain of his prior misdemeanor theft convictions. The defendant argues that the judge did not balance the probative relevance of the prior convictions to the defendant's credibility against the potential prejudice that could arise due to knowledge of the defendant's extensive criminal record. The defendant contends that he was denied a fair trial because he was effectively prevented from testifying based on his fear of the prejudicial impact of the State's disclosure of the prior convictions.

■■ Generally, a theft conviction is admissible for impeachment purposes because there is a reasonable relationship between theft and testimonial deceit. Theft reflects adversely on one's honesty and therefore relates to one's ability to be truthful under oath. (*People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563.) However, this rule is not absolute. The admissibility of prior convictions for impeachment purposes is discretionary with the trial judge who must weigh the probative value of the convictions against the potential for prejudice. When applying this balancing test, the trial court must consider the following factors: nature of the crime, nearness or remoteness in time of the conviction, the subsequent career of the person, and whether the crime was similar to the one charged. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695; see *People v. Patterson* (1980), 88 Ill. App. 3d 168, 410 N.E.2d 396.) It should also be recognized that the goal of a criminal trial is to dispose of the charge in accordance with the truth. Thus, the trial courts are encouraged to consider the extent to which it is important for the jury to hear the defendant's story rather than to know of his prior convictions. *People v. Montgomery.*

In ruling on the defendant's motion in limine, the trial court held that

all of the defendant's prior convictions, numbering approximately 20, were admissible because they were relevant to the defendant's credibility. The judge specifically indicated his doubt that anyone would believe a person with 20 prior theft convictions. The defendant relies on this remark and argues that the jury would have been prejudiced by the defendant's extensive criminal record. Since the trial judge did not limit the number of admissible convictions, the defendant contends that it is obvious that the trial judge did not perform the balancing test required by *Montgomery*.

■■ We agree with the defendant's argument. While the defendant's prior convictions were probative of his credibility, we believe that the admissions of all 20 convictions would have been overly prejudicial. The defendant's credibility could have been adequately impeached by the introduction of a lesser amount of convictions. Thus, we believe the trial judge erred in denying the defendant's motion in its entirety.

The third issue raised by the defendant on appeal is that the trial judge abused his discretion in sentencing the defendant to the maximum prison term permitted. In light of our decision to reverse the defendant's convictions and to remand the cause for a new trial, we need not address the question of whether the defendant was properly sentenced.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

RIZZI, P. J., and WHITE, J., concur.