THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS VANDA, Defendant-Appellant.

First District (4th Division)   No. 80-1147

---

Opinion filed December 23, 1982.

554

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and James S. Veldman, Assistant State's Attorney, of counsel), for the People.

JUSTICE JIGANTI delivered the opinion of the court:

After a jury trial, the defendant Thomas Vanda was found guilty of the stabbing murder of Marguerita Bowers and was sentenced to serve 300 to 500 years imprisonment. The sole issue raised at trial was whether the defendant should be found not guilty by reason of insanity; it has remained undisputed that the defendant killed Bowers. On appeal, the defendant contends that he was denied a fair trial because of eight alleged trial errors and consequently asserts that the evidence that reached the jury was so unbalanced in the State's favor that the jury had virtually no choice but to find the defendant guilty of murder. Specifically, the defendant contends: (1) that the trial court erroneously refused to admit letters written by the defendant as rebuttal evidence of his mental state; (2) that the trial court improperly allowed evidence of another killing committed by the defendant and that the State violated the trial court's ruling *in limine* regarding discussion of the facts surrounding the earlier crime; (3) that it was error for the court to admit the defendant's post-arrest request for a specific attorney as evidence of the defendant's sanity because it infringed upon the defendant's *Miranda* rights; (4) that the court erroneously admitted a receipt into evidence without proper foundation; (5) that the court improperly restricted cross-examination of State expert witnesses; (6) that expert psychiatric witnesses called by the State were allowed to testify outside their area of expertise; (7) that the court allowed a jury instruction that improperly highlighted the testimony of State's witnesses; and (8) that the prosecution made improper comments during closing arguments. For these reasons, the defendant requests that we remand his case for a new trial.

■ The first issue raised by the defendant is whether the trial court improperly refused to admit letters into evidence that were written by the defendant to his parents and to his former attorneys. During its case in chief, the State offered into evidence a letter written by the defendant to a fellow inmate after the defendant's arrest. It described how to successfully evade a murder charge by pleading insanity. In rebuttal, the defendant sought to admit several letters written by him to his parents and to the attorneys who had represented him on a prior murder charge. From what we can gather from the record, these letters contained defendant's false representations that he was acting in authoritative positions within the prison, such as helping the superintendent run the jail or serving as a fireman and

being injured while putting out fires at the jail. While in most instances the defendant offered the actual letters into evidence, he also wished to have his mother testify regarding the contents of letters he had written to her that had been destroyed. Stating that all of the letters offered by the defendant were inadmissible hearsay and "self-serving," the court refused to allow them to be admitted into evidence. We disagree and find that the letters should have been admitted as relevant nonhearsay evidence of the defendant's mental state.

We first find that the letters were relevant to the issue of the defendant's mental state. When a defendant's sanity is in issue, great latitude is allowed in admitting evidence relating to a defendant's mental condition because "[t]o determine insanity, you cannot take an isolated cross section of a single series of acts and myopically examine it within the narrow confines of the date set forth in a formal charge. In order to make a proper determination, there must be more than a cross section; we must examine the person, his history, his relationship with the victim, prior mental illnesses and other intervening factors of causation." (*People v. Haun* (1966), 71 Ill. App. 2d 262, 268, 217 N.E.2d 470, 473.) Within reasonable time limits, every act in a defendant's life is relevant to the inquiry regarding his sanity (McCormick, Evidence sec. 249, at 592-93 (2d ed. 1972)), including events that occurred both prior to and subsequent to the crime committed by the defendant. (*People v. Lannes* (1966), 78 Ill. App. 2d 45, 223 N.E.2d 440.) Therefore, as Professor Wigmore has stated, "The first and fundamental rule, then, will be that *any and all conduct* of the person is admissible in evidence. There is no restriction as to the kind of conduct. There can be none; for if a specific act does not indicate insanity it may indicate sanity. It will certainly throw light one way or the other upon the issue." (2 Wigmore, Evidence sec. 228, at 9 (Chadbourn rev. ed. 1979).) We thus find that the defendant's letters were relevant to the issue of his sanity because they were offered to demonstrate alleged delusions under which he suffered.

Because we find that the letters were relevant evidence, we must now determine whether they nonetheless should have been excluded as inadmissible hearsay. We find that the letters are quite simply not hearsay statements and that the hearsay rule should not have barred their admission into evidence.

█ Hearsay is in-court testimony or written evidence concerning an out-of-court statement where the out-of-court statement is offered to prove the truth of the matter asserted in the statement. (*People v. Garlick* (1977), 46 Ill. App. 3d 216, 360 N.E.2d 1121; McCormick, Ev-

idence sec. 246, at 584 (2d ed. 1972).) Where out-of-court statements are offered to circumstantially prove or disprove insanity, they are offered to show the defendant's mental state rather than the literal truth of the defendant's assertions. (2 Wigmore, Evidence sec. 228, at 14-15 (Chadbourn rev. ed. 1979); McCormick, Evidence sec. 249, at 592-93 (2d ed. 1972); see also E. Cleary and M. Graham, Illinois Evidence sec. 801.6, at 402-03 (3rd ed. 1979).) In the instant case, the defendant's letters were not offered to prove that he was actually helping the superintendent run the jail or that he was a prison fireman, but rather to demonstrate that the defendant was suffering from delusions and was therefore insane. Thus, the letters were not offered to prove the truth of their contents and they consequently cannot be considered as hearsay. See also *People v. Garlick* (1977), 46 Ill. App. 3d 216, 360 N.E.2d 1121 (defendant's out-of-court statements admissible as nonhearsay evidence of mental state); *People v. Chancy* (1980), 91 Ill. App. 3d 817, 414 N.E.2d 1239 (the words "Fantastic, Super Dopee and Me" written on blackboard at scene of crime were nonhearsay); *Sollars v. State* (1957), 73 Nev. 248, 316 P.2d 917 (defendant's "classic paranoid letters" admissible as nonhearsay evidence of mental state); *Chase v. State* (Alaska 1962), 369 P.2d 997 (defendant's out-of-court statements admissible on insanity issue).

The State cites *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, in support of its position that the defendant's letters were "self-serving" hearsay. The *Hester* court held that an examining doctor secured solely for the purpose of testifying at trial cannot testify regarding subjective symptoms described by the patient. (See also McCormick, Evidence secs. 292, 293, at 690-94 (2d ed. 1972).) However, in the instant case, the State fails to make a distinction between statements, such as those in *Hester*, that are offered for the truth of their contents and statements, such as those in the case at bar, that are offered simply as circumstantial evidence of the defendant's mental state. Illustratively, in *State v. Lucas* (1959), 30 N.J. 37, 152 A.2d 50, the New Jersey Supreme Court found that even an examining physician, such as the doctor in *Hester*, could testify regarding statements made to him by the defendant where the issue is insanity rather than guilt. Therefore, the State's reliance upon *Hester* is misplaced, and we conclude that the letters offered by the defendant were not inadmissible hearsay.

■ Having determined that the defendant's letters were relevant nonhearsay evidence, we must determine whether they could be refused admission into evidence simply because they were "self-serving." We find the term "self-serving" to be something of a misnomer

because any evidence or testimony offered by any party to a lawsuit is logically and necessarily "self-serving" to that party's presentation of his case. An examination of Illinois case law reveals that it is the *hearsay rule* that generally precludes a party from proving his own self-serving statements. (*People v. Colletti* (1968), 101 Ill. App. 2d 51, 242 N.E.2d 63.) The rationale for exclusion is that testimony regarding out-of-court statements made by a defendant after commission of a crime is not competent because the defendant had a motive to fabricate favorable testimony relating to his innocence. (*People v. Lewis* (1979), 75 Ill. App. 3d 259, 393 N.E.2d 1098.) However, in the instant case, the fact that the defendant killed the victim is not at issue; the jury was only concerned with the question of the defendant's sanity or insanity. Indeed, while the defendant may have had a motive to lead others to believe he was insane, we find two reasons for this to be a matter weighed in the jury's determination of his sanity rather than an issue of admissibility. First, the defendant's "self-serving" statements were not hearsay and therefore do not fall under the hearsay rule's ancient prohibition against admission of such statements. (See generally McCormick, Evidence sec. 290, at 688 (2d ed. 1972).) Second, as we determined earlier, practically all evidence of a defendant's mental state is relevant when the defendant's sanity is at issue, and we hesitate to restrict the bounds of the jury's inquiry into the defendant's mental state.

As the Seventh Circuit has observed, "We think that a flat rule of exclusion of declarations of a party on the grounds that they may be described as 'self-serving' even though otherwise free from objection under the hearsay rule and its exceptions, detracts from the fund of relevant information which should be available to the jury, without, in compensation, materially insuring the integrity of the trial process." (*United States v. Dellinger* (7th Cir. 1972), 472 F.2d 340, 381.) We therefore conclude that the letters offered by the defendant were relevant and should not have been excluded as either inadmissible hearsay or as "self-serving" statements.

■ As a final matter, the State contends that the best evidence rule should bar any testimony concerning the letters sent to Vanda's parents which were subsequently destroyed. However, it appears from the record that testimony regarding these letters was excluded by the trial court on hearsay grounds rather than under the best evidence rule. While the State claims that "the judge obviously found insufficient showing of legitimate loss or destruction," we cannot indulge in this presumption where there is no evidence to support it in the record. Rather, the defense offered to provide testimony that the letters

had not been destroyed with intent to defraud or to conceal evidence, and the State did not indicate that it could offer testimony to rebut the defendant's offer of proof. The trial court subsequently ordered that the letters were inadmissible as "self-serving" hearsay. Where the record is unclear concerning any ruling on the best evidence question and where the defense could apparently meet its initial burden of proving legitimate loss or destruction, we believe that the best evidence rule should not have barred admission of this evidence. See *People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.

■■ The second issue raised by the defendant is whether the trial court improperly allowed the State to introduce evidence concerning a previous crime committed by the defendant. Specifically, in 1971, the defendant had been found not guilty of murder by reason of insanity of the stabbing death of a 15-year-old girl. The defendant was committed to the Department of Mental Health and was subsequently released.

In the instant case, an expert psychiatric witness called by the defense had previously examined the defendant at the Department of Mental Health following the earlier murder charge. In a pretrial motion *in limine*, the defense moved to restrict the State from referring to the previous killing and its disposition. The State argued that in order to cross-examine the defense expert, it was necessary to determine the facts which led the expert to reach his diagnosis, including the fact that the defendant had previously been charged with murder and had been committed to the Department of Mental Health. The court ruled that the State could introduce evidence of the previous murder charge and the defendant's confinement with the Department of Mental Health, but ordered that the disposition of the case and any facts surrounding the incident could not be presented to the jury. Apparently for tactical reasons, the defense, in its opening argument, introduced the fact that the defendant had been found not guilty of a previous murder charge by reason of insanity. Further, in the State's cross-examination of the defense expert referred to above, the prosecutor asked if the defendant had blacked out "at the very moment of the act causing the death of the girl involved here," referring to the facts of the previous killing. The defense moved for a mistrial. The trial court denied the defendant's motion but it did strike the prosecutor's question from the record and promptly admonished the jury to disregard it. The defendant now contends that both the court's initial ruling on the motion *in limine* and the prosecutor's alleged violation of the ruling *in limine* require this court to remand the defendant's case for a new trial. We disagree.

We believe that evidence of the defendant's previous murder charge was admissible because it was relevant for a purpose other than to show criminal disposition and because its probative value outweighed its prejudicial effect. As we have previously discussed in detail, practically every event in the defendant's life is relevant when the defendant interposes an insanity defense. This inquiry may include consideration of a defendant's history of criminal conduct. *People v. Burress* (1971), 1 Ill. App. 3d 17, 272 N.E.2d 390.

Further, once the defendant raised the defense of insanity, the State was required to shoulder the formidable burden of proving the defendant sane beyond a reasonable doubt. (See, *e.g., People v. Spears* (1978), 63 Ill. App. 3d 510, 380 N.E.2d 423.) Where the State had to meet this affirmative duty of proving the defendant sane, we think it would be inequitable to curtail meaningful avenues of inquiry during the State's cross-examination of the defendant's own expert on the issue of insanity. And we do believe the State's inquiry to be relevant. Where an examining psychiatrist is clearly aware that his patient was found not guilty of murder by reason of insanity, we cannot help but suggest that this information could have had a significant impact upon a doctor's diagnosis of the patient's sanity or insanity. Further, in order for the State to effectively cross-examine the witness, it was necessary for the State to elicit testimony concerning the circumstances upon which the expert based the opinions he expressed at trial. Without this background, the jury would have been unnecessarily presented with a very one-sided view of the facts surrounding the doctor's examination of the defendant.

■ Thus, having determined that this information was relevant, we observe that "[a]s a general rule, evidence is held inadmissible if it points to crimes unrelated and unconnected to the crime for which the defendant is being tried. [Citations.] *However, evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime.*" (Emphasis added.) (*People v. Bailey* (1980), 88 Ill. App. 3d 416, 420, 410 N.E.2d 545, 547; accord, *People v. Hoppock* (1981), 98 Ill. App. 3d 58, 423 N.E.2d 1351; *People v. McKibbins* (1981), 100 Ill. App. 3d 787, 427 N.E.2d 238.) In the instant case, information relating to the defendant's previous murder charge was relevant for two reasons other than to demonstrate general bad character or criminal disposition. First, the information was probative as to the circumstances under which the defense expert developed his diagnosis. Second, the information was probative as to the issue of insanity, not guilt. Importantly, the fact that the defendant actually stabbed the victim was not in issue in this case. Rather, the

sole issue to which evidence was directed at trial was the inquiry into the defendant's sanity or insanity. Therefore, the defense cannot object to evidence regarding the defendant's prior crime where propensity to commit a crime, or the fact that the defendant killed *this* victim, is not even in issue.

Finally, evidence of the defendant's prior crime still would not be admissible, even if relevant, if the prejudicial effect of the evidence outweighed its probative value. (*People v. Hoppock* (1981), 98 Ill. App. 3d 58, 423 N.E.2d 1351; *People v. McKibbons* (1981), 100 Ill. App. 3d 787, 427 N.E.2d 238.) However, we do not believe that to be the case here. We cannot find that the fleeting references to the defendant's prior crime unduly prejudiced the defendant's position. Therefore, we conclude that the trial court was not in error when it allowed limited evidence concerning the defendant's prior murder charge.

■ The third contention advanced by the defendant is that the trial court erroneously admitted the defendant's post-arrest request for a specific attorney as evidence of his sanity. During the State's case on rebuttal, the defense made a motion *in limine* to prevent two assistant State's Attorneys from testifying that the defendant had requested his attorney after being read his *Miranda* rights. The trial court denied the defense motion but instructed the jury that this evidence was only to be considered in assessing the defendant's sanity or insanity. The State thereafter brought out evidence relative to the defendant's request for an attorney both in its case on rebuttal and in its closing arguments. On appeal, the defendant argues that the admission of this evidence even for a limited purpose violated his constitutional right to contact an attorney as established by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. We agree.

The thrust of the State's argument is that evidence concerning the defendant's request for his attorney was allowed not as an inference of the defendant's guilt, but rather as evidence of his mental state. We disagree with the State's position for two reasons. First, while we realize that considerable latitude is permitted in admission of evidence when the insanity defense is raised (*People v. Haun* (1966), 71 Ill. App. 2d 262, 217 N.E.2d 470), as we stated earlier, we do not believe that it goes so far as to penalize the defendant for exercising his constitutional right to request assistance of counsel. Even though the evidence arguably demonstrated the defendant's awareness of the circumstances surrounding his arrest and his understanding of the warnings read to him, the United States Constitution acts as a bar to this sort of evidence regardless of how relevant it may be

to the issue of the defendant's mental state. Were we to hold otherwise, a defendant would have to sacrifice his constitutional right to counsel in order to avoid having such evidence introduced against him at trial. Under the reasoning of the United States Supreme Court decisions chronicled below, we believe that it would be constitutionally abhorrent to require the defendant to surrender his right to counsel rather than risk being penalized at trial for the exercise of that right. The second reason we cannot accept the State's contentions is because we do not believe that the defendant's request for an attorney was so probative as to the issue of his sanity that it outweighed the prejudicial effect to him.

A prosecutor may not comment upon a defendant's failure to testify at trial because to do so would violate the self-incrimination clause of the fifth amendment. (*Griffin v. California* (1965), 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229.) As the United State Supreme Court stated in *Griffin*, "It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." (380 U.S. 609, 614, 14 L. Ed. 2d 106, 109-10, 85 S. Ct. 1229, 1232-33.) In the instant case, the defendant was similarly penalized where the State was allowed to introduce evidence relating to the defendant's exercise of his right to counsel as substantive evidence of his sanity during the State's case on rebuttal. Where a constitutional right is at stake, we do not believe that it matters whether the inquiry is into the defendant's sanity rather than his guilt. The result is identical; the defendant has been penalized for the exercise of his constitutional right to request counsel.

The same reasoning is found in *Simmons v. United States* (1968), 390 U.S. 377, 19 L. Ed.2d 1247, 88 S. Ct. 967, where the defendant moved to suppress evidence discovered during an improper warrantless search. In order to establish standing to raise the suppression issue, the defendant testified that he owned the items found during the search. Over the defendant's objection, his suppression hearing testimony was admitted against him at trial. The Supreme Court found admission of this evidence to be error, stating, "[I]n this case [the defendant] was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination. In these circumstances, we find it intolerable that one constitutional right should have to be surrendered in order to assert another." (390 U.S. 377, 394, 19 L. Ed. 2d 1247, 1259, 88 S. Ct. 967, 976.) In the instant case, we believe that the defendant was faced with a similar plight; he would either have to forego his constitutional right to coun-

sel or bear the prejudice of having his exercise of this right introduced against him at trial on the issue of his sanity.

Further, in *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 405 N.E.2d 1306, this court found that it was plain error for a prosecutor to question a defendant's innocence because the defendant had requested assistance of counsel. We observed, "The crux of the claimed constitutional error is that the prosecutor's comment and its resulting inference equate the exercise of a constitutional privilege with an admission of guilt, thereby penalizing defendant for the exercise of his right to counsel. We agree." (84 Ill. App. 3d 1065, 1071-72, 405 N.E.2d 1306, 1311.) In *Meredith,* we further found Justice Black's concurring remarks in *Grunewald v. United States* to be "particularly noteworthy" and find them to be similarly applicable under the facts of the case at bar:

> "[There are] no special circumstances that would justify use of a constitutional privilege to discredit or convict a person who asserts it. The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them. It seems peculiarly incongruous and indefensible for courts which exist and act only under the Constitution to draw inferences of lack of honesty from invocation of a privilege deemed worthy of enshrinement in the Constitution." *Grunewald v. United States* (1957), 353 U.S. 391, 425-26, 1 L. Ed. 2d 931, 955, 77 S. Ct. 963, 984-85 (Black, J., concurring).

In summary, where the defendant's exercise of his constitutional right to counsel was used to discredit him and to prejudice his position at trial, we believe the evidence submitted by the State in this case was improperly allowed into evidence. Where the defendant's state of mind was the sole issue raised at trial, we cannot accept the State's contention that the Constitution will only protect the defendant from admission of such prejudicial evidence where the issue is guilt rather than sanity. A constitutional privilege remains a constitutional privilege in either event, and a defendant who raises an insanity defense should not be denied the protection of the Constitution simply because the crux of his case revolves around his mental state.

■ We also do not think that the defendant's request for an attorney is so probative on the issue of his sanity that it outweighs the prejudicial effect to him. Illustratively, a prosecutor may not comment upon a defendant's silence after he is given his *Miranda* warnings because the silence is considered to be "insolubly ambiguous." (*Doyle v. Ohio* (1976), 426 U.S. 610, 617, 49 L. Ed. 2d 91, 97, 96 S. Ct. 2240, 2244; see also *United States v. Hale* (1975), 422 U.S. 171, 45 L. Ed.

2d 99, 95 S. Ct. 2133.) We believe that a defendant's request for an attorney can also offer a number of different interpretations and is similarly ambiguous. For example, as the State contends, the request for counsel may indicate that the defendant was sane and appreciated the criminality of his conduct. However, the defendant's request could also mean that he was merely reacting to the police officer's remarks because he was confused or intimidated by the arrest or the setting at the police station. We cannot accept the fact that only sane people contact their attorneys and we therefore cannot find that the defendant's request for counsel was particularly relevant to the issue of his mental state.

Further, in both *Doyle* and *Hale*, the United States Supreme Court found it improper to impeach the defendant's testimony with the fact that he remained silent after he was given his *Miranda* warnings. In the instant case, the defendant did not take the stand and his credibility was not in issue. Thus, evidence of his request for counsel was allowed not for impeachment purposes but rather as substantive evidence of his sanity. Under *Doyle* and *Hale*, the admission of this information as substantive evidence would be an even more repugnant penalty to the defendant for exercising his constitutional rights. Specifically, the Supreme Court would not even allow a defendant's silence to be used to test his credibility, let alone to be admitted as substantive evidence.

Finally, two cases cited by the State can be easily distinguished from the case at bar. In both *People v. Finkey* (1982), 105 Ill. App. 3d 230, 434 N.E.2d 18, and *People v. Muskgrove* (1976), 44 Ill. App. 3d 381, 358 N.E.2d 336, the defendants' requests for counsel were allowed into evidence but neither defendant raised this issue in his posttrial motion in order to preserve the issue for appeal. Consequently, both the *Finkey* and *Muskgrove* courts refused to recognize the admission of this sort of evidence to be plain error and did not decide the constitutional issue. However, in the instant case, the admission of evidence concerning the defendant's request for an attorney was properly preserved for purposes of appeal and we therefore need not address the plain error question. We find that the trial court improperly penalized the defendant for exercising his constitutional privilege to contact an attorney by allowing evidence to be admitted concerning the defendant's request for counsel and by allowing the State to comment upon this evidence in closing arguments. Contra, *Sulie v. Duckworth* (7th Cir. 1982), 689 F.2d 128.

The fourth issue raised by the defendant is whether the trial court properly allowed a receipt into evidence. When the defendant was ar-

rested as he fled from the victim's apartment building after the killing, he was carrying a knife, a leather sheath and a paper bag containing a receipt from "Shaver's World." While the defense objected to testimony concerning the receipt, the arresting officer was allowed to testify that the receipt was in the defendant's possession at the time of arrest. Further, a representative from Paul Cutlery, the sole distributor of the type of knife carried by the defendant, testified that his company distributed this kind of knife to Shaver's World and that the suggested retail price for the knife was $12.50. The receipt reflected a $12.50 purchase from Shaver's World on the day of the killing and was allowed into evidence as a State exhibit.

The defendant contends that an improper foundation was laid for admission of the receipt and that the State failed to establish a proper chain connecting the receipt to the defendant's purchase of the knife. Consequently, the defendant argues, the probative value of the receipt was minimal while it prejudiced the defendant by indicating that he purchased the knife with premeditation on the day of the killing. We cannot accept the defendant's argument and therefore find that the receipt was properly admitted into evidence. We find it necessary to reach this conclusion for three reasons.

First, we find this receipt to be admissible because a physical object may be admitted into evidence provided there is a connection established between the object, the defendant and the crime. (*People v. Tribett* (1981), 98 Ill. App. 3d 663, 424 N.E.2d 688.) In the instant case, the receipt was found in the defendant's possession when he was arrested immediately following the killing. We find this to be a sufficient connection between the receipt, the defendant and the crime. In contrast, the cases cited by the defendant are concerned with evidence that was not in the defendants' possession at the time of the crimes or at the time of the arrests. For example, in *People v. Malkiewicz* (1980), 86 Ill. App. 3d 417, 408 N.E.2d 47, several books with sexually oriented titles were found during an inventory search of the defendant's car after he had been charged with rape. The court found that the books had been improperly allowed into evidence solely to show criminal propensity. Specifically, the State failed to demonstrate that the books belonged to the defendant, that the defendant had read the books or what the contents of the books were. Further, there was no evidence that the books were present at the scene of the crime or were an instrumentality of the crime. The instant case poses no similar problems of connecting the receipt to the defendant and the crime where the defendant apparently had the receipt in his possession throughout the entire incident.

■■ In addition, a proper foundation may be laid for the introduction of an object into evidence by a witness' identification of the object. (*People v. Thibudeaux* (1981), 98 Ill. App. 3d 1105, 424 N.E.2d 1178.) In the instant case, the receipt was identified by the arresting officer. Importantly, the propriety of receiving physical evidence rests primarily within the sound discretion of the trial judge. (*People v. Ford* (1980), 83 Ill. App. 3d 57, 403 N.E.2d 512.) Thus, where both the connection and the foundation were proper, we will not disturb the trial court's ruling.

■■ Our final reason for holding that the receipt was properly allowed into evidence is that where the jury could circumstantially infer from the defendant's possession of the receipt that the knife was purchased before the killing, this was probative as to whether the defendant lacked "substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." (Ill. Rev. Stat. 1981, ch. 38, par. 6–2(a); see also *People v. Spears* (1978), 63 Ill. App. 3d 510, 380 N.E.2d 423.) Therefore, where this evidence was relevant within the terms of the Illinois insanity statute, we cannot agree with the defendant's final contention that the probative value of the receipt was minimal. We consequently find that the receipt was properly admitted into evidence.

■■ The fifth issue advanced by the defendant is whether the trial court improperly restricted the defense's cross-examination of certain State experts. Specifically, following the killing of the victim in this case, Doctors Rogers and Cavanaugh of the Isaac Ray Center examined the defendant and subsequently testified on behalf of the State. The Isaac Ray Center is partially funded by the Department of Mental Health. The parents of the victim in the instant case were suing the Department of Mental Health in an unrelated civil suit at the time of the defendant's trial, claiming that the Department of Mental Health had negligently released the defendant prior to the time he killed the victim.

The defense attempted to draw out this information during cross-examiantion of Doctors Rogers and Cavanaugh in order to demonstrate that they had an improper motive to testify that the defendant was sane. In essence, the defense claimed that testimony of the defendant's insanity would be damaging to the Isaac Ray Center's funding source, and in turn would be damaging to the Isaac Ray Center and to the doctors themselves. The court sustained the State's objection to this line of inquiry. We find the relationship between the doctors, the Department of Mental Health and the civil suit to be too remote and therefore uphold the trial court's ruling.

The latitude allowed in cross-examination of a witness is generally a matter within the trial court's discretion. (*People v. Outlaw* (1979), 75 Ill. App. 3d 626, 394 N.E.2d 541.) The trial judge's decision in this area will not be reversed on appeal absent a clear abuse of discretion that results in manifest prejudice to the defendant. (*People v. Robinson* (1978), 67 Ill. App. 3d 539, 384 N.E.2d 962.) While we recognize that the defendant should be allowed wide latitude in establishing a prosecution witness' bias, motive or interest (*People v. Pizzi* (1981), 94 Ill. App. 3d 415, 418 N.E.2d 1024), we cannot find that the trial judge abused his discretion in finding the defendant's claim of bias to be too tenuous under the facts of this case. First, neither doctor would be personally liable if the Department of Mental Health lost its civil suit. Second, the doctors were not employed by the Department of Mental Health; rather, the Isaac Ray Center merely received partial funding from the agency. Thus, as the trial judge observed, there was no showing that the doctors would attempt to protect the agency. Finally, over two years had passed between the defendant's 1976 release from the Department of Mental Health and his 1978 examination by Doctors Rogers and Cavanaugh. It does not follow that a 1978 diagnosis of the defendant's sanity or insanity would have any real bearing upon a civil suit concerned with the defendant's mental state at the time of his 1976 release. Thus, even disregarding the doctors' somewhat vague connection to the Department of Mental Health, we do not see how they could reasonably be perceived as being unduly biased.

Therefore, because we see no concrete motive for either doctor to develop an uncandid or deceptive diagnosis of the defendant's mental state, we find the defendant's arguments to be too speculative. We find that the trial court did not abuse its discretion in refusing to allow the defense to pursue this line of inquiry on cross-examination. Further, we cannot see that the defendant has suffered any "manifest prejudice" where both doctors were rigorously cross-examined by the defense and where an extensive amount of evidence contrary to the doctors' testimony was presented to the jury.

■■■ The defendant's next assignment of error on appeal is that State's experts were allowed to improperly testify regarding the Illinois insanity statute and that the trial court highlighted this improper testimony by allowing a non-Illinois Pattern Jury Instruction offered by the State. The defendant argues that the trial court erroneously allowed State experts to state the statutory test for insanity in Illinois and describe how they perceived the defense to operate within the framework of the law. Further, the defendant asserts that it was im-

proper to allow a psychiatrist testifying for the State to observe that he did not believe that a diagnosis of schizophrenia, standing alone, would fulfill the legal definition of insanity under the Illinois insanity statute. (See Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a).) The defendant also argues that the trial court improperly highlighted this testimony by allowing a State non-pattern instruction which read "a personality disorder is not a mental disease or defect within the meaning of the Illinois Statute." In addition, the defendant asserts that the trial court erred in not allowing a defense non-pattern instruction which stated that schizophrenia and organic brain disease are mental diseases or defects in Illinois. We find that the trial court properly allowed the State's experts to testify in terms of the Illinois insanity statute but we also find that the trial judge should not have allowed either non-pattern jury instruction.

An examination of the record reveals that the State experts' testimony was couched in terms of the doctors' medical expertise as it related to the Illinois insanity statute. Illinois courts prefer to have a medical expert in an insanity defense case testify in terms of the insanity statute regarding the existence of a mental disease or defect and its relationship to a defendant's conduct. (*People v. Anderson* (1981), 93 Ill. App. 3d 646, 417 N.E.2d 663; *People v. Zemola* (1972), 9 Ill. App. 3d 424, 292 N.E.2d 195.) Where the State experts testified utilizing the statutory language, we cannot accept the defendant's position that the doctors were improperly offering legal expertise rather than testifying within the bounds of their respective areas of medical knowledge. Thus, because the statutory language is preferred as a basis for expert testimony, it would be unreasonable to require the experts to ignore this legal terminology while testifying.

We also find that in the context of the record, it was not improper for the State psychiatrist to state that the mere diagnosis of schizophrenia would not in itself meet the statutory test of insanity. While a diagnosis of schizophrenia may qualify as a mental disease or defect under the Illinois insanity statute (*People v. Kuhn* (1979), 68 Ill. App. 3d 59, 385 N.E.2d 388), the doctor in the instant case was merely observing that in addition to having a mental disorder or defect such as schizophrenia, a defendant must also be unable to comprehend the criminality of his conduct or conform his conduct to the law in order for him to meet the statutory test of insanity. (Ill. Rev. Stat. 1981, ch. 38, par. 6—2(a).) Again, we believe this testimony was properly presented in terms of the insanity statute and we find no error.

We do think, however, that it was improper for the trial court to allow the State's non-pattern jury instruction. A trial judge

should be particularly hesitant to allow non-pattern instructions, especially where the instruction may call particular attention to certain portions of the evidence. (*People v. Godbout* (1976), 42 Ill. App. 3d 1001, 356 N.E.2d 865.) Here we believe that the additional instruction could have placed undue emphasis upon the testimony of the State witnesses and should have therefore been refused. However, one superfluous or misleading jury instruction does not necessarily require a reviewing court to reverse (*People v. Robinson* (1974), 21 Ill. App. 3d 343, 315 N.E.2d 95) and, because we find the instant error to be relatively minor, we decline to do so here.

Finally, we do not believe that the trial court erred in refusing the non-pattern jury instruction that was offered by the defendant because again, the unnecessary inclusion of non-pattern instructions is not favored. Further, even if it was error to refuse the defendant's instruction, we cannot say that substantial justice was denied in the instant case and the jury's verdict may have been the result of the trial court's failure to give the defendant's instruction. (*People v. Jones* (1980), 84 Ill. App. 3d 896, 406 N.E.2d 112.) Therefore, we find that the trial court properly refused to give the defendant's tendered jury instruction.

The final issue raised by the defendant is whether two allegedly improper remarks made by the prosecutor during closing arguments require this court to remand the defendant's case for a new trial. First, the defendant contends that the prosecutor improperly commented that the defendant's collection of three matchbox cars was not indicative of an abnormal adult preoccupation with toys. The defendant points out that the actual number of such toys was 60 and that the prosecution misstated the evidence presented at trial. However, because the defendant made no objection to these comments during the State's closing argument, we find this matter to have been waived for purposes of appeal. *People v. Cobb* (1981), 97 Ill. App. 3d 615, 422 N.E.2d 1106.

The second remark objected to by the defendant concerns the State's implication that the public defender's office had withdrawn from the defendant's case because it found the case to be hopeless. In fact, the withdrawal was necessitated by a potential conflict of interest. The prosecutor mentioned the withdrawal of the public defender's office twice during closing argument. The first time it was mentioned, the defense did not object and therefore, the matter is waived for purposes of appeal. (*People v. Cobb* (1981), 97 Ill. App. 3d 615, 422 N.E.2d 1106.) The second time the prosecutor mentioned the withdrawal, the court sustained the defense's objection and instructed the

jury to disregard the comment.

Generally, if timely objection is made at trial concerning an improper remark made by counsel to the jury, the court can usually correct any error by sustaining the objection and instructing the jury to disregard the comment. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) Thus, although we think the comment would have been best left unsaid by the prosecutor, we do not find that the defendant was prejudiced where the trial court promptly acted to cure any alleged error.

We think this is especially true when we examine the record of the closing arguments in detail. The closing arguments of both the State and the defendant must be examined in their entirety and the complained of comments must be placed in their proper context. (*People v. Nemke* (1970), 46 Ill. 2d 49, 263 N.E.2d 97; *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.) In the instant case, the complained of remark is isolated in lengthy closing arguments which extend over 175 pages of the trial transcript. Taken in context, we do not believe that the prosecutor's comment was a material factor in the jury's determination of the defendant's mental state and therefore, we do not find that the defendant was unduly prejudiced. (*People v. Kitchen* (1977), 53 Ill. App. 3d 521, 368 N.E.2d 528.) Consequently, we will not recognize the prosecutor's comment to be reversible error. *People v. Franklin* (1976), 42 Ill. App. 3d 408, 355 N.E.2d 634.

■ After examining all of the above alleged trial errors cited by the defendant, we are left to consider whether we must reverse this case due to the two instances of error that have been recognized by this court. Specifically, we have found that it was erroneous to exclude from evidence the letters written by the defendant to his family and former attorneys. Further, we found that it was error to admit the defendant's post-arrest request for an attorney as evidence of his sanity and for the prosecutor to refer to this evidence during closing arguments. We must now decide whether these errors prejudiced the defendant to such an extent that we must now reverse his conviction and remand his case for a new trial.

We note first that this was a lengthy trial where voluminous evidence was presented by both the defense and the State. The trial spanned a two-week period and generated nearly 2,000 pages of trial and pretrial transcripts. The parties presented and examined 30 witnesses, including seven expert medical experts. Also, additional potential witnesses were not called because the parties stipulated as to the nature of their respective testimony. The defense had the opportunity

to present an exhaustive amount of testimony through both lay and expert witnesses regarding the defendant's mental condition and to extensively cross-examine the State's witnesses. Ultimately, a vast amount of evidence was presented by both the defense and the prosecution concerning the issue of the defendant's mental state.

When we realistically weigh the two trial errors in relation to all of the other evidence presented at trial, we cannot conclude that the complained of errors influenced the verdict reached by the jury in any significant manner. (See *People v. West* (1981), 102 Ill. App. 3d 50, 429 N.E.2d 599.) "Generally, a reviewing court will not reverse a jury verdict due to an error in the admission of evidence unless it appears that there was a denial of real justice." (*People v. West* (1981), 102 Ill. App. 3d 50, 54, 429 N.E.2d 599, 603; see also *People v. Brown* (1982), 104 Ill. App. 3d 1110, 433 N.E.2d 1081.) We do not think that the trial court's errors in admitting evidence either included or excluded evidence that was pivotal in the jury's determination of its verdict. Importantly, reversal is not required if, after a close examination of the record, it appears to us that the error complained of would not be the basis of an average jury's verdict. (*People v. Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169.) We think that this is the case here.

While the defense was improperly barred from admitting the defendant's letters into evidence, we do not think that this significantly prejudiced the defendant. Specifically, the defense sought to admit these letters to demonstrate that the defendant was suffering from delusions. However, we observe that the testimony of several defense witnesses, including the defendant's mother, independently established facts of the sort contained in the defendant's letters. The witnesses testified that the defendant told police that he was, for example, a fireman or a policeman. Similarly, the defense claimed the letters were indicative of the defendant's insanity because he claimed in the letters to be such things as a prison fireman or an aide to the prison superintendent. Thus, where the jury in fact considered evidence very similar to the evidence contained in the letters, we do not believe that the jury's verdict would have changed in the event that the letters had been admitted. We therefore find this error to be harmless.

The admission of evidence concerning the defendant's post-arrest request for an attorney was an error of constitutional magnitude. However, a Federal constitutional error can be held harmless if we believe it to be harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824; *People v.*

572

*Spicer* (1979), 79 Ill. 2d 173, 402 N.E.2d 169.) While we tread very lightly in the area of an individual's constitutional rights, we think that the error committed here was harmless beyond a reasonable doubt. Again, where this evidence was isolated in a lengthy trial and there was an exhaustive amount of evidence on both sides of the insanity issue, we do not believe this evidence had a significant impact upon the minds of the jury. (See *Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726.) Therefore, on this record, we believe the error to be harmless beyond a reasonable doubt even when measured under a constitutional error standard.

Based on the foregoing, we find that the errors committed at trial, either individually or cumulatively, were harmless beyond a reasonable doubt and we therefore affirm the judgment of the circuit court.

Affirmed.

JOHNSON, P.J., and LINN, J., concurring.